AXE *v.* TOLBERT.

1. Brokers' Options—Consideration—Vendor and Purchaser.

While a mere option to sell land, without the payment of any consideration at the time of executing the contract, is a nullity, the rule is not applicable to an arrangement with real estate brokers to advertise and sell a farm at a stated price, securing to them by its terms an option to purchase the land within a year, and stipulating for the payment of damages of the amount of commissions fixed by the terms of the writing.

2. Same—Definition of Option.

An option of purchase, sometimes called a unilateral contract, is an unaccepted offer by one person to sell to another the property described at a stated price, within a certain time, held open and made binding upon the proposed seller for a time specified, by mutual agreement, for a valid consideration, that the offer will not be revoked during the time stated.

3. Same—Consideration.

A substantial, not merely nominal, consideration is required to support an option.

4. Same—Seal—Deeds.

Absence of consideration may be shown, notwithstanding

the instrument evidencing the option is under seal. Mere time or money expended in an effort to sell property under option cannot be construed as consideration to the party from whom the option was taken.

5. EVIDENCE — PAROL EVIDENCE—WRITTEN INSTRUMENT—BROKERS —OPTION.

The written option or contract between brokers and the owner of property placed in their hands, controls in so far as the agreement has been put in written form, having been accepted and acted upon by the parties.

6. BROKERS—COMMISSIONS—SERVICES.

Advertising expenses, services performed, and time employed by brokers in a bona fide effort to sell a farm, and before notice of conveyance by the owner, sufficiently support a written contract giving exclusive rights of sale to the real estate agents, during a specified period, and fixing their fees at one-half the sale commission if the owner should otherwise dispose of his realty.

7. SAME—STIPULATED DAMAGES—REASONABLENESS.

Such provision to pay half the commission of 5 per cent., fixed by the contract, if the owner should previously dispose of the farm, was not so unreasonable as to amount to a penalty, where the plaintiffs had advertised and negotiated for a purchaser during six months, and were in touch with possible buyers.

8. SAME—PRINCIPAL AND AGENT—OPTION.

Where the circumstances surrounding the taking of an option on real property showed that both parties intended to create the relation of broker and principal, and both understood and treated it as such, their undisputed intent should be held to control.

9. PARTNERSHIPS—FICTITIOUS NAMES—NAMES.

The name William Axe and Son, was not a fictitious or assumed name so as to require registration and filing a certificate with the county clerk under Act No. 101, Pub. Acts 1907 (2 How. Stat. [2d Ed.] § 2626 *et seq.*), where the firm contained two members described in the title.

Error to Tuscola; Beach, J. Submitted November 25, 1913. (Docket No. 102.) Decided March 27, 1914.

Assumpsit by William Axe and another, doing business as William Axe & Son, against Catherine Tolbert and Dorr McGlocklin, for brokers' commissions. Judgment for defendant on a directed verdict. Plaintiffs bring error. Reversed.

*Hall, De Foe & Hall,* for appellants.

*W. J. Spears,* for appellees.

STEERE, J. Defendants resided upon and owned a farm consisting of about 300 acres, located in Tuscola county, Mich. Plaintiffs were a real estate firm located in Bay City, Mich., selling as agents and handling mostly farm lands. Their practice was to obtain what they called "options," on farms largely in Tuscola, Bay, Saginaw, and Midland counties and then secure purchasers by a system of advertising and soliciting, the larger part of their customers being from the States of Ohio, Indiana, Illinois, and Iowa, in which States they particularly advertised and solicited.

On June 26, 1912, William Axe, the senior member of the firm, went to defendants' home "to talk with them about getting their farm to sell." As a result, after the matter had been talked over with both defendants, they signed and delivered to him the following instrument which was first read over in full aloud by defendant McGlocklin to defendant Tolbert:

"This agreement, entered into by and between Catherine Tolbert & Dorr McGlocklin of Vassar, as party of the first part, and Wm. Axe & Son, as party of the second part, witnesseth, that for a valuable consideration, the receipt of which is hereby acknowledged, said party of the first part has this day optioned unto said party of the second part the following real estate in Tuscola county, Mich., to wit: 304 acres more or less all in section 11, town 11 north, range 7 east.

"Said party of the second part shall have the right

to give option of sale to purchaser and to close the option hereby created at any time within twelve months from the date hereof, or a continuation of 90 days, if at the expiration of this agreement there is a deal pending, and said party of the first part hereby agrees that he will at any time before the expiration of said option, execute and deliver to said party of the second part, * * * a good and sufficient warranty deed to said real estate, free from all liens and incumbrances, and to furnish said party of the second part an abstract of title showing perfect title.

"It is hereby agreed by the parties hereto that upon such demand being made and said deed executed and delivered as aforesaid that said party of the second part is to pay to said party of the first part the sum of $30,000, which sum the party of the first part agrees to accept as full payment of the purchase price for said real estate.

"It is further agreed by the parties hereto that the above amount shall be paid as follows: $15,000 cash on date of purchase (less a commission of 5% of the total purchase price above, to be paid to the party of the second part as their fee out of the first payment on purchase price) $15,000, the remainder of the purchase price to be paid as follows: To suit at 6% annual interest.

"Said party of the first part hereby agrees not to sell, or in any way to incumber said real estate during the term of the option hereby created, and that should he do so he will forfeit and pay to said party of the second part, as liquidated damages, the sum of $750.

"It is further understood and agreed by the parties hereto that should the party of the first part fail, neglect or refuse to execute and deliver said deed when demanded as aforesaid, that said party of the first part will forfeit and pay to the party of the second part, as liquidated damages, the sum of $1,500.

"The failure, neglect or refusal of said party of the second part to close the option hereby created shall in no manner render him liable to said party of the first part, and he shall not become indebted thereby in any amount whatever.

"The present title to above described property is in Catherine Tolbert & Dorr McGlocklin. Incumbrance ———— payable ———— interest ———— per cent.

"In witness whereof said parties have hereunto set their hands and seals this 26th day of June, 1912.
          "CATHERINE TOLBERT.    [L. S.]
          "DORR McGLOCKLIN.      [L. S.]
                    "P. O. Vassar, Mich."

Axe testified that he paid defendants nothing for this option, but took it to plaintiffs' office in Bay City and kept it, and endeavored by their usual methods to find a buyer, spending time and money to effect a sale of the farm; that prospective purchasers from Ohio, Illinois, and Indiana were, on five different occasions, taken to the farm to look it over, the last party being taken there in November, but nothing had yet resulted from it, which he explained as meaning "it hadn't materialized as yet;" that they continued their efforts until Defendant McGlocklin notified them in January, 1913, that the farm was sold; that plaintiffs did not surrender or withdraw from the contract, and were not asked to do so, but McGlocklin met witness in Bay City in January, 1913, and told him that he had sold the farm and came over to see if it would be satisfactory, and if he had a right to sell it himself by paying plaintiffs the stipulated $750; upon being assured that he had, he said that as soon as the sale was closed up fully and they got their money, he would pay it; that the farm was sold, but defendants neglected or refused to pay plaintiffs the amount stated, or any other sum. Witness also testified that about a week or 10 days later they received inquiries regarding the farm from Illinois parties, and, thinking possibly the sale might not have been consummated, they wrote McGlocklin that if the farm was not sold to let them know, and they would take their prospective buyers out there, but the letter was answered by defendants' attorney, to what effect is not stated, but left to inference.

No testimony was introduced or offered by the defendants. At the conclusion of plaintiffs' testimony

a motion was made for a directed verdict in defendants' favor on the ground that the alleged contract was without consideration and void. After argument this motion was granted, the court construing the instrument upon which plaintiffs relied as a mere option, given without consideration, not accepted in writing by the plaintiffs, and which could be revoked by defendants at any time before acceptance, demand for deed and tender of price, and therefore not binding under the undisputed facts; that the provision for stipulated damages in case sale was made by defendants, being without consideration and a part of the invalid instrument, was also void and unenforceable. The court also said:

"It is urged that plaintiffs incurred expense in trying to sell the farm, and testimony was received, subject to objection and exception, tending to show such facts. This testimony would have been applicable to an action for services as agents or factors, but the reasons given for taking the option form of contract were that it was done to avoid the necessity of proof of the production of a real purchaser and tender of the purchase price; but it seems to the court that the substance of the contract still requires such proof, before the stipulated damages can be recovered, or at least an unequivocal acceptance, which would have given the defendants some rights other than the right of withdrawal."

The court rightly held that, viewed merely as an option, the alleged contract was a nullity. An option of purchase, sometimes called a unilateral contract, is an unaccepted offer by one person to sell to another designated property, at a stated price, within a certain time, held open and made binding upon the proposed seller for the time specified by a mutual agreement between the parties, for a valid consideration, that the offer will not be revoked and the privilege of accepting shall continue to the proposed purchaser dur-

ing the stated time. It is a preliminary contract for the privilege of purchase, not a contract of purchase. As such, to be binding, it must to that extent not only be mutual, but based upon a substantial, and not nominal, consideration. *Rude* v. *Levy*, 43 Colo. 482 (96 Pac. 560, 24 L. R. A. [N. S.] 91, 127 Am. St. Rep. 123). In this State the absence of consideration may be shown notwithstanding the instrument is under seal. *Hobbs* v. *Electric Light Co.*, 75 Mich. 550 (42 N. W. 965). Plaintiffs' own testimony is that they paid nothing for the option, and their only claim of consideration is based upon subsequent efforts to sell the farm. Time and money spent by a party in trying to sell property for which he holds an option cannot be construed as a consideration to the party from whom he has secured the option.

In this case the terms of the instrument negative enforcing specific performance by which title to the property could be obtained. If defendants refused to sell, the only penalty was to pay the contemplated commission to plaintiffs. It is plain, both from the relations and vocations of the parties, the circumstances of the making and delivery of this instrument, its subject-matter, and what they subsequently did and said in regard to it, that the real thought, intent, and purpose of the parties was not a sale of the farm to plaintiffs, but to give them an exclusive and special brokerage agency to find a purchaser for defendants and negotiate a sale of their farm within one year upon specified terms. Being a contract for services to be performed within a year, it was not required to be in writing to be valid, but so far as the terms of agency were in writing and accepted and acted upon by the parties, the writing would control.

Eliminating the attempt to make it more binding by confusing and befogging the instrument with the phraseology and name of an option, the writing by its

essence falls clearly within the law of that special class of agency known as real estate agency, or brokerage. When William Axe, representing a real estate agency, in the line of his business, went to defendants to talk with them about "getting their farm to sell," he talked it over with both of them. He obtained from them their price, terms, the commission they were willing to pay, and the length of time they would give the firm the exclusive right to handle the property, with the provision, in effect, that if the owners found a purchaser and effected a sale during the continuance of plaintiffs' agency, the commission should be divided between them, and if, during the year, they changed their minds and refused to sell to a purchaser plaintiffs had procured, they would nevertheless pay the full 5 per cent. commission. Just how seriously defendants regarded the option effort with which the instrument was elaborated is of no importance. It was a matter of indifference to them who bought the farm if their terms were met, for the instrument provided in plain language that they must pay the stated commission if a purchaser was produced, unless they negotiated a sale themselves, in which event they would only pay plaintiffs one-half of such commission. That they clearly understood this is evident from McGlocklin's interview with Axe in Bay City to make certain both parties understood it alike. The business of selling real estate involves employment on the part of the agent or broker of such instrumentalities and methods as often render it difficult to determine to what extent a sale by others may be attributed to his efforts, and a special contract of brokerage recognizing this, and providing exclusive agency for a definite time and a division of commission in case of sale by the owner, is not unreasonable or unlawful. A broker may be entitled to a commission on a sale made by the owner without the broker's co-operation, if they see

fit to so provide in the contract of agency. Such contracts are not to be confused with the ordinary and general contract of brokerage where compensation is entirely contingent on the broker finding and producing a purchaser.

The testimony in this case shows that the written authority to sell was accepted, retained, and acted upon by plaintiffs. They rendered services under it and incurred expenses in an honest effort to find a purchaser, continuing the same until notified that the property was sold. Services of this nature performed by a broker are a sufficient consideration for a special contract of agency. *Goward* v. *Waters*, 98 Mass. 596; *Kimmell* v. *Skelly*, 130 Cal. 555 (62 Pac. 1067). In the latter case the owner employed real estate brokers to endeavor to find a purchaser for her property, agreeing to pay them $2,250 commission in case they succeeded during the existence of the contract, and also to pay them the same consideration in case she made the sale during that time. The court there said:

"The consideration for her promise to pay the money if the sale was made by her was the performance of services by the brokers in seeking a purchaser."

The case of *Hoskins* v. *Fogg*, 60 N. H. 402, is well in point upon the real contract of agency upon which the minds of the parties met in the instant case. Hoskins was a real estate agent in whose hands Fogg placed his farm for sale, signing a proposal as follows:

"If you procure a purchaser for the property described above, I will pay you, or to your order, $150; if I sell it outside your influence, I will pay you one-half that sum; if I withdraw the property before the sale is consummated, I will pay you whatever you have paid out for advertising. I further agree that no other party shall have the selling of the same. You are to have this place in your hands for sale one year from date above.

[Signed]   "JOSEPH FOGG."

Plaintiff did not find a purchaser, but made efforts and rendered services in seeking for one. Within the year defendant sold the farm outside plaintiff's influence. The court held plaintiff was entitled, under proper pleadings, to recover the stipulated amount for such a contingency, saying:

"The agreement to pay one-half that sum if the defendant sold his farm himself, was not an independent stipulation promising to pay the plaintiff for what he was not to do, nor for what the defendant was to do and did do himself, but a provision for paying the plaintiff for such services as he might render in the performance of the contract, and for any damages suffered by reason of being prevented from completing the performance. It was liquidated damages, intended to include the value of any services that might be rendered by the plaintiff under the contract, his expenses, and the damage from the defendant's preventing a full performance by selling his farm himself."

In the instant action the liquidated damages provided for in case of sale by the owner are just one-half the commission which plaintiffs would have received had they sold the property; they had been advertising the farm and endeavoring to work up a sale for six months. They yet had half of the contract time remaining in which to find a purchaser, and were in touch with inquiring parties. It cannot be said, in the light of the cases already cited and the circumstances shown, that the stipulated sum as a basis of compensation is so out of all proportion to any damages which could arise that the court must treat the stipulation as in the nature of a penalty, when applied to a sale made by defendants.

In the final analysis the intention of the parties must govern in the construction of a contract. Not only is the intention of the parties as above construed deducible from the language of the instrument, taken as a whole, in the light of the surrounding and con-

temporaneous facts, but as to the particular clause relative to the damages sought to be recovered here the undisputed testimony is that the parties subsequently made clear to each other what the intention and understanding of each was, and agreed upon such construction.

It is urged as a defense that plaintiffs have no standing in court for the reason they do not show that they had filed with the county clerk a proper certificate setting forth the names of the members of their firm, in compliance with Act No. 101, Pub. Acts 1907. No mention is made of this defense in the plea and notice filed; but, aside from that question, we are not inclined to hold that the firm name of William Axe & Son was an assumed or fictitious name in contemplation of the statute. There is nothing fictitious or misleading or uncertain in the name. It gives the full name of the head of the firm, and plainly discloses the identity of the other member. Persons doing business with the firm would be advised who the members were and whom to hold responsible. In States having similar statutes such has been the test applied to firm names where there is a correct designation by name of the members of a firm, though the Christian names do not appear. *Castle Bros.* v. *Graham*, 87 App. Div. (N. Y.) 97 (84 N. Y. Supp. 120), s. c., 180 N. Y. 553 (73 N. E. 1120); *Pendleton* v. *Cline*, 85 Cal. 142 (24 Pac. 659); *Carlock* v. *Cagnacci*, 88 Cal. 600 (26 Pac. 597); *Bovee* v. *De Jong*, 22 S. D. 163 (116 N. W. 83); *Guiterman* v. *Wishon*, 21 Mont. 458 (54 Pac. 566); *Patterson* v. *Byers*, 17 Okl. 633 (89 Pac. 1114, 10 Am. & Eng. Ann. Cas. 810).

For the reasons given we are of the opinion that the judgment of the trial court must be reversed and a new trial granted.

McAlvay, C. J., and Brooke, Kuhn, Stone, Ostrander, Bird, and Moore, JJ., concurred.