[S. F. No. 6991. In Bank.—June 8, 1917.]

SCHWARZ & GOTTLIEB, INC. (a Corporation), et al., Appellants, v. FELIX MARCUSE et al., Respondents, and Consolidated Actions.

PARTNERSHIP—FIRM NAME NOT SHOWING NAMES OF PARTNERS—FILING CERTIFICATE.—The firm name "P. H. Murphy & Son" is not a designation showing the names of the persons interested as partners in the business of the firm, and the persons doing business in this state under such names cannot maintain an action upon a contract made or transaction had under that name, without first filing and publishing the certificate required by sections 2466 and 2468 of the Civil Code.

ID.—REFUSAL OF CONTINUANCE OF TRIAL TO ALLOW FILING OF CERTIFICATE—DISCRETION.—In an action by such partnership to foreclose

a mechanic's lien, in which the defendants, by answer filed long before the trial, pleaded in abatement the plaintiffs' failure to comply with the requirements of sections 2466 and 2468 of the Civil Code, it was not an abuse of discretion for the court, during the course of the trial, to deny the plaintiffs' request for a continuance in order to permit them to file and publish the required certificate.

Id.—Person Doing Business Under Fictitious Name — Certificate Falsely Stating Names of Partners.—A person who was the only one interested in a business transacted under a fictitious name, and who failed to file the certificate required by such sections, cannot maintain an action on a contract entered into under such fictitious name, notwithstanding he procured a certificate to be filed by other persons who falsely represented therein that they were the persons conducting as partners the business under such fictitious name.

Mechanic's Lien—Completion of Contract—Time for Filing Lien.— Section 1187 of the Code of Civil Procedure specifies several events,—among others the filing by the owner of a notice of cessation from work,—any one of which may be equivalent to "a completion" of a building contract, and thus a starting point for the filing of a mechanic's or materialman's claim of lien.

Id.—Foreclosure of Lien Timely Filed—Filing of Previous Lien.— If the claimant file a claim of lien within the statutory period after the happening of any event so made equivalent to a completion, he is entitled to foreclose the same in an action commenced within the time limited by section 1190 of the Code of Civil Procedure, notwithstanding he had previously filed a similar claim of lien, the right to foreclose which had been lost by reason of the limitations of that section.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco.   Jas. M. Troutt, Judge.

The facts are stated in the opinion of the court.

Henry A. Jacobs, for Appellants.

Alexander D. Keyes, for Respondents.

MELVIN, J.—The case was decided upon appeal by the district court of the third appellate district and was transferred to this court for the purpose of a further consideration of two of the points involved.

The first of these questions was whether or not P. H. Murphy and E. W. Murphy could maintain an action under the designation of P. H. Murphy & Son without filing the certifi-

cate contemplated by sections 2466 and 2468 of the Civil Code. If this were a question unaffected by Californian precedent, we might perhaps hold that the partnership had the right and capacity to sue, but in view of the decisions of this court, and particularly the opinion in the case of *North v. Moore,* 135 Cal. 621, [67 Pac. 1037] (decided in 1902), in which it was held that "Abrams Bros." was not a designation showing the names of persons interested as partners, we are satisfied that the opinion of the district court of appeal written by Mr. Presiding Justice Chipman correctly states the law. Supplementing his comments upon *Axe* v. *Tolbert,* 179 Mich. 556–566, [146 N. W. 418], we may say that the statement of the court in that case is not entirely supported by the citations made. The first of these, *Castle Bros.* v. *Graham,* 87 App. Div. 97, [84 N. Y. Supp. 120], 180 N. Y. 553, [73 N. E. 1120], is in absolute conflict with *North* v. *Moore,* and is therefore not authoritative in California. The two Californian cases cited by the Michigan supreme court (*Pendleton* v. *Cline,* 85 Cal. 142, [24 Pac. 659], and *Carlock* v. *Cagnacci,* 88 Cal. 600, [26 Pac. 597]), involve partnerships in which suit was brought in each instance by partners using their names but not their initials. *Bovee* v. *De Jong,* 22 S. D. 163, [116 N. W. 83], was exactly like the two cases last discussed and was decided upon their authority. *Guiterman* v. *Wishon,* 21 Mont. 458, [54 Pac. 566], was a case in which "Guiterman Bros." was held a sufficient designation of the names of the partners. This also is of no value as authority in this state, owing to the later decision of *North* v. *Moore,* 135 Cal. 621, [67 Pac. 1037]. *Patterson* v. *Byers,* 17 Okl. 633, [10 Ann. Cas. 810, 89 Pac. 1114], the last case cited by the supreme court of Michigan in the Axe case, announces the remarkable conclusion that "Patterson Furniture Company" shows that there is a company composed of persons whose surname is Patterson; and that "it further shows that there are no other members of the firm except those whose surname is Patterson." Evidently the learned justice who wrote that opinion overlooked the fact that commonly the title "Patterson Furniture Company" might indicate a corporation or copartnership in which the stockholders or members might or might not be Pattersons. It will thus be seen that neither by its reasoning nor its cited authority is *Axe*

v. *Tolbert,* 179 Mich. 556–566, [146 N. W. 418], of convincing weight.

Upon the appeals of P. H. Murphy & Son and of William A. Fagan we adopt the opinion of the learned district court of appeal as follows:

"Several actions to enforce laborers' and materialmen's liens were consolidated. Of these, the following plaintiffs appeal from the judgment, namely: P. H. Murphy & Son, William A. Fagan, Pope & Talbot (a corporation). There is an appeal also by plaintiffs, H. W. B. Taylor and Henry Walter, but the finding as to them is not challenged and the judgment must be affirmed.

"THE CLAIM OF P. H. MURPHY & SON.

"Respondents assign two grounds in support of the judgment against the claim of P. H. Murphy & Son: First, that the firm name of P. H. Murphy & Son does not show the names of the persons interested in the partnership and, as it was admitted that P. H. Murphy & Son had not filed with the clerk of the county in which was their principal place of business the certificate required by section 2466 of the Civil Code, they were forbidden by section 2468 of the same code to maintain the action; second, that the lien was filed too late or at the wrong time.

"Upon the first of these grounds the court made the following finding: 'That at the date of the filing of the complaint in action No. 47,202 and during all the times therein mentioned and continuously ever since the date of the filing of the last mentioned complaint, the plaintiffs, P. H. Murphy and E. W. Murphy, were partners transacting business in the state of California under a designation not showing the names of the persons interested as partners in such business, to wit, under the designation of P. H. Murphy & Son. That a certificate stating the names in full of all the members of such partnership and their places of residence was never filed with the clerk of the county in which the principal place of business of such partnership was situated during all the times mentioned in the last-mentioned complaint and in these findings, and that such certificate was not published in a newspaper published in such county or elsewhere, and that the contract and transaction upon which the causes of action of the plaintiffs, P. H. Murphy and E. W. Murphy hereinbefore referred to are based, were made and had under said part-

nership name of P. H. Murphy & Son, and for that reason the said plaintiffs, P. H. Murphy and E. W. Murphy, cannot maintain any action on said contract or transaction.'

"P. H. Murphy testified: 'The firm of P. H. Murphy & Son is a copartnership composed of myself and my son, E. W. Murphy. There are no other members of the firm. We are transacting business in this state. No certificate of copartnership . . . has been filed in the office of the county clerk of the city and county of San Francisco, or has any such certificate been filed elsewhere. The name of my son who is my partner is Edward William; he is not my only son; I have two others.'

"Section 2466 of the Civil Code reads as follows: 'Except as otherwise provided in the next section every person transacting business in this state under a fictitious name and every partnership transacting business in this state under a fictitious name, or a designation not showing the names of the persons interested as partners in such business, must file with the clerk of the county in which his or its principal place of business is situated, a certificate, stating the name in full and the place of residence of such person and stating the names in full of all the members of such partnership and their places of residence. Such certificate must be published once a week for four successive weeks, in a newspaper published in the county, if there be one, and if there be none in such county, then in a newspaper in an adjoining county.'

"Section 2468 provides: ' . . . No person doing business under a fictitious name, or his assignee or assignees, nor any persons doing business as partners contrary to the provisions of this article, or their assignee or assignees, shall maintain any action upon or on account of any contract or contracts made, or transactions had, under such fictitious name, or in their partnership name, in any court of this state until the certificate has been filed and the publication has been made as herein required.'

"The supreme court, in *North* v. *Moore*, 135 Cal. 621, [67 Pac. 1037], said: 'Abrams Bros. cannot be said to be a designation "showing the names of the persons interested as partners." The firm name might apply equally to a partnership composed of two or more and might embrace all or only some of the brothers of the name Abrams. The statute clearly de-

feats their right to maintain the action against Moore, and leaves them without any right to be heard on this appeal.'

"In *Nicholson & Co.* v. *Auburn G. M. & M. Co.*, 6 Cal. App. 547, [92 Pac. 651], it was held, as also in *Byers* v. *Bourret,* 64 Cal. 73, [28 Pac. 61], that Nicholson & Co. in the former, and J. D. Byers & Co. in the latter case, was not a designation showing the names of the persons interested as partners in the business. *Trudel* v. *Butori,* 19 Cal. App. 584, [127 Pac. 76], cited by appellant, is not in point. There the claim of F. X. Trudel & Son was assigned to plaintiff in whose favor judgment was entered and it was held, on the authority of *Gray* v. *Wells,* 118 Cal. 11, [50 Pac. 23], that the assignee could maintain the action. The statute was amended in 1911 (Stats. 1911, p. 441), probably because of this decision, making the section applicable to assignees of persons doing business as partners contrary to the provisions of the article, which was not the case prior to the amendment. (Civ. Code, sec. 2468.) *Pendleton* v. *Cline,* 85 Cal. 142, [24 Pac. 659], and *McLean* v. *Crow,* 88 Cal. 644, [26 Pac. 596], are cited by appellants. In the Pendleton case it was held that the firm name of Pendleton & Williams was not fictitious and that 'it was true as far as it went' and fell short only in not showing the full names of all the partners; that the reason underlying the statute for all practical purposes 'is satisfied by information as to the surnames of the partners.' *McLean* v. *Crow* followed this rule.

"In the case of *Axe* v. *Tolbert,* 179 Mich. 556, [146 N. W. 418], a contract was entered into in which 'Wm. Axe & Son' were mentioned 'as party of the second part,' the contract relating to an option given second party to purchase certain land. The action was brought by 'Wm. Axe and another, partners as Wm. Axe & Son.' It was urged as a defense 'that plaintiffs had no standing in court for the reason they do not show that they had filed with the county clerk a proper certificate setting forth the names of the members of the firm in compliance with Act No. 101, Pub. Acts 1907.' It appeared that 'no mention was made of this defense in the plea and notice filed.' This, under our decisions, would have been sufficient to justify the court in disregarding the defense, for it has been held that the failure to file the required certificate must be taken advantage of, as matter of defense, by answer or plea in abatement and will otherwise be deemed waived.

(*Phillips* v. *Goldtree*, 74 Cal. 151, [13 Pac. 313, 15 Pac. 451] ; *Carlock* v. *Cagnacci*, 88 Cal. 600, [26 Pac. 597].)   It was not necessary to the decision in the Axe case that the statute should be construed as it was.   The court, however, stated that the firm name was not 'an assumed or fictitious name in contemplation of the statute.   It gives the full name of the head of the firm, and plainly discloses the identity of the other member.   Persons doing business with the firm would be advised who the members were and whom to hold responsible,' The court cites, among others, the cases in 85 and 88 Cal., *supra*, which, as has been shown, are quite different from the Axe case, for there the surnames of all the partners were given.   The statute in the Axe case is not before us and it may refer to 'an assumed or fictitious name.'   Our statute deals not only with fictitious names but refers also to a name which does not 'show the names of all the persons interested as partners.'

"We cannot accept the reasoning in the Axe case.   The name P. H. Murphy & Son may not be fictitious in the sense of the statute, nor is it claimed so to be by respondents. What they claim is that 'the designation does not show the name of E. W. Murphy.'   There were other sons of P. H. Murphy besides E. W., the partner.   Respondents in their brief say: 'The word "son" may have been a family name. There is a well-known text-book written by a lawyer named Son, "Son on Corporations."   In the San Francisco directory we find the firm name "Kingsley & Son," a firm composed of Ampro A. Kingsley and Emma Son.   The most that can be said of the name of P. H. Murphy & Son is that it suggests the probability that the partner referred to as Son bears the same name as the partner referred to as Murphy. But the designation does not show the name of Murphy more than once, whereas the statute requires it to show the name of Murphy twice in order to comply with section 2466.'   It seems to us our supreme court went as far as we should go, without frittering away the statute, in holding, as it did in *Pendleton* v. *Cline* and *McLean* v. *Crow, supra,* that where the surnames appear the full names are not required.   Here, however, we are asked to hold that 'Son' in the designation of the firm not only means Murphy but a particular son of P. H. Murphy, to wit, E. W. Murphy, whereas in fact he had two other sons.   The designation of P. H. Murphy & Son, it

is true, as was said in the Axe case, 'gives the full name of the head of the firm,' but it does not 'plainly or at all' 'disclose the name of the other member,' as was held in that case. It is not sufficient to identify the head of the firm alone. The statute expressly says, where the business is conducted under 'a designation not showing the names of the persons interested as partners in such business,' the certificate must be filed. We can, in applying the statute, see no difference between the designation 'Abrams Bros.' (*North* v. *Moore,* 135 Cal. 621, [67 Pac. 1037]) and the designation 'P. H. Murphy & Son.' The identity of the partners or partner is not shown in either case.

"Defendants in their answer alleged that P. H. Murphy and E. W. Murphy were a partnership transacting business in this state under a designation not showing the names of the persons interested as partners in such business, to wit: under the designation of 'P. H. Murphy & Son' and further alleging 'that a certificate stating the names in full of all the members of such partnership and their places of residence was never filed with the clerk of the county,' etc. This answer was filed long before the trial. At the trial and after the evidence had been given upon the question counsel 'requested the court in the event that the court should decide that plaintiffs were such a partnership as would be included under section 2466 of the Civil Code that a continuance be granted in the trial for the purpose of permitting plaintiffs, P. H. Murphy and E. W. Murphy, to comply with the provisions of sections 2466 and 2468 of the Civil Code by filing the certificate required and publishing the same, and that the trial of the action thereupon proceed.' It is now urged that the court erred in not complying with this request. Whether the court, against defendants' objection, at this stage of the trial could have granted such request we do not decide, but that it was a matter within its discretion we have no doubt; and we cannot say that its discretion was abused. We think the plaintiffs could not maintain the action and hence it is not necessary to discuss the second ground urged in support of the judgment.

### "THE WILLIAM A. FAGAN CLAIM.

"The court found 'that the plaintiff William A. Fagan was a person transacting business in the state of California under a fictitious name, to wit: the name of Panama Electric

Company, and that the said plaintiff never filed in the office of the county clerk . . . a certificate stating the name in full and the place of residence of said William A. Fagan who was then and there a person transacting business under said fictitious name of Panama Electric Company, and never published such certificate in any newspaper. That the contract and transactions upon which the plaintiff, William A. Fagan, based his complaint in the said action No. 47,202 were in fact contracts made between the plaintiff, William A. Fagan, doing business under the fictitious name of Panama Electric Company with the defendant, Felix Marcuse (the contractor), and were in fact transactions had by the said plaintiff under the said fictitious name, and for that reason the said William A. Fagan cannot maintain any action on said contract or transactions.'

"It appeared that Henry Walter and H. W. B. Taylor filed and published a certificate in which they stated that they were partners doing business under the firm name of Panama Electric Company and that Walter and Taylor were the only members of the firm. Fagan explained in his testimony the reason for this being done as follows: 'The reason Mr. Taylor and Mr. Walter became members of the Panama Electric Company is this: I am a member of local No. 6 of the Electrical Workers and therefore cannot work on contracts. I asked Taylor and Walter if I might use their names, thus allowing me to work on contracts and they said I could without giving them any compensation.' Fagan testified further: 'Q. What interest did the Panama Electric Company have in the contract in question? A. All interest. Q. What are the facts of the relation between yourself and the Panama Electric Company with reference to this particular contract and the work done? A. I own the Panama Electric Company; in fact the Panama Electric Company is William A. Fagan. . . . Q. Had the Panama Electric Co. received any compensation or any amount for the work done on that building? A. The Panama Electric Co. received three hundred dollars on account of the work done on that building. Q. When I state Panama Electric Co. I mean Taylor and Walter. A. They have earned nothing. I received three hundred dollars; total amount I claimed is $650.50; balance of $350.50 has not been paid.' On cross-examination he testified: 'Q. Mr. Fagan, as I understand you, during the time the Waldmann building

was being put up you were doing business as a contractor under the name of Panama Electric Co. You had no partners? A. Legally I think I had. Q. Did you divide the profits? A. No. Q. Did you divide the expenses? A. No. Q. Between you and them the understanding was that it was only their names that were to be used and that all losses were to be borne by you and you were to get all the profits? A. Yes. Taylor and Walter had no financial interest in the Panama Electric Co.; did no work and had no work to be done; purchased no materials and supplied no materials; all done by me alone.'

"As set forth in the complaint the order given by the contractor, Marcuse, under which the work was done was as follows:

" 'San Francisco, Cal., May 3rd, 1912.
" 'Panama Electric Co.,
      " '426–24th Avenue, San Francisco.
   " 'Gentlemen: You can go ahead with electric wiring at Golden Gate and Pierce at $612.00 as arranged today. Building will be ready in about 10 days.
                                    " 'Yours truly,
                                        " 'Felix Marcuse.'

"We quote from appellant's brief: 'The contention of appellant is that the contract was entered into by Panama Electric Co. as the agent of William A. Fagan, although the work was actually performed by William A. Fagan, and that it was not necessary for said William A. Fagan to file such certificate as required by the provisions of sections 2466–2468 of the Civil Code, in order to maintain this action. . . . If H. W. B. Taylor and Henry Walter were willing to enter into contracts for William A. Fagan in order to permit plaintiff, Fagan, to carry on business they are the persons to complain, and not defendants herein. The defendants were not injured in any manner by the agreement entered into between Fagan and H. W. B. Taylor and Henry Walter.'

"We cannot accede to this view of Fagan's relation to the Panama Electric Company. He testified that he and the company were identical; that he is the company. If he was the company how could it be his agent in a legal sense, i. e., a distinct and separate entity acting for him and in his stead? We understand the statute to require not only that the names of the persons comprising the fictitious partnership must be

stated but truthfully stated.  A person should not be permitted to do business under a fictitious name and be protected by a certificate that falsely represents the names of the partners to be some other persons.  The very object of the statute would be thwarted if such evasion of the statute were countenanced.  The court found, and it is not disputed, that Taylor and Walter had nothing to do with the contract or the building.  If they represented the Panama Electric Company it was a false as well as fictitious company.  The real and true Panama Electric Company was Fagan, and as he filed no certificate he cannot maintain the action.''

## POPE & TALBOT CLAIM.

Regarding the claim of Pope & Talbot a new question arises, but it is one in the solution of which we are aided by a decision of this court given since this matter was discussed by the district court of appeal.  The essential facts and the question to be decided are well set forth by the district court of appeal, and we adopt that part of the opinion as follows:

''Pope & Talbot filed two claims of lien, the first on November 9, 1912; the second on December 27, 1912.  Both claims were sufficient in form and substantially identical.  Plaintiff failed to foreclose the first claim of lien, but brought an action to foreclose the second lien on March 14, 1913, within ninety days after the filing of the second claim of lien.  The court found that, on October 17, 1912, the owners 'began to occupy and use the said building and entered into the occupation and use of the said building on the last-mentioned date, and that such occupation and use of the said building by the defendants (the owners) continued ever since said last-mentioned date; that the said occupation and use . . . has been open, notorious, and continuous; . . . that none of the materials referred to in any of the said complaints and no part of the labor therein referred to were furnished after the seventeenth day of October, 1912; that on the twenty-sixth day of October, 1912, all labor upon the said contract between the defendants (the owners) and the said defendant Marcuse (contractor) ceased, and that no labor upon the last-mentioned contract or upon the last-mentioned building has been performed since the last-mentioned date; that at the time when the said labor ceased the last-mentioned contract was not completed and never was completed; that within forty days after

cessation of labor upon the said contract, to wit, on the thirtieth day of November, 1912, the defendants (owners) filed for record in the office of the said recorder a notice setting forth the date on which such cessation of labor occurred, to wit, the twenty-sixth day of October, 1912, together with their names and the nature of their title and a description of the property sufficient for identification, to wit, the property referred to in the said complaints; that the said notice was verified by the defendants (owners).'

"The court found that 'the claim of lien filed by the said plaintiff, Pope & Talbot, for recordation the ninth day of November, 1912, was in all respects valid, but that the action to foreclose the lien of said Pope & Talbot was commenced on the fourteenth day of March, 1913, more than ninety days after the said claim of lien was filed on the ninth day of November, 1912.' The court also found that Pope & Talbot filed another claim of lien 'for the same demand as that for which the said claim of lien on the ninth day of November, 1912, . . . and was precisely similar to that filed on the ninth day of November, 1912,' except that it set forth that defendants (the owners) had, on November 30, 1912, filed a notice of cessation of labor upon the said building and except one or two other statements not necessary to be stated. The court further found that the cause of action of Pope & Talbot 'is barred by the provisions of section 1190 of the Code of Civil Procedure.'

"Appellants contend that, the owners having recorded a notice of the cessation of labor showing, among other facts, that the contractor had, on the twenty-sixth day of October, 1912, abandoned the contract, this notice gave appellant the right to file a second claim of lien and that respondents are estopped from questioning the validity of the second claim of lien. Defendants contend that 'by filing their claim of lien upon November 9, 1912, Pope & Talbot perfected their lien and that their time to foreclose commenced then to run. They could not, by filing a second claim on the twenty-seventh day of December, 1913, extend by forty-eight the ninety day period which the law gave them in which to commence their action of foreclosure. Their lien and their only lien is therefore barred by the statute of limitations, and is not saved by the fact that a second claim of lien was thereafter filed.'

"Plaintiffs now contend that defendants, the owners, 'are estopped from questioning the validity of the second claim of lien, as the defendants are necessarily barred by their voluntary act in recording a notice of cessation.' "

It is true that, as Mr. Phillips says in his work on Mechanics' Liens: "Where the law allows ninety days for filing a lien, and ninety days after filing in which to bring suit, and a good lien is filed, the second ninety days begins to run, and the time cannot be extended by amending or filing a new lien, though within the original ninety days." (Phillips on Mechanics' Liens, sec. 323.)    The text is supported by *Battle* v. *McArthur*, 49 Fed. 715, and *Mulloy* v. *Lawrence*, 31 Mo. 583, is also to the same effect.    In both of these cases the courts were construing a statute of the state of Missouri which gives to a contractor a lien which must be filed within ninety days next after the completion of the work.    It was properly held that the filing of one lien under the Missouri statute set in motion the statute of limitations, and that unless suit was brought within ninety days thereafter the lien ceased to exist by the express provisions of the law.    But in California we have a very different statute, which must be carefully examined in connection with the facts here presented.    That is section 1187 of the Code of Civil Procedure, which, in part, is as follows:

"Every original contractor, claiming the benefit of this chapter, within sixty days after the completion of his contract, and every person save the original contractor claiming the benefit of this chapter, within thirty days after he has ceased to labor or has ceased to furnish materials, or both; or at his option, within thirty days after the completion of the original contract, if any, under which he was employed, must file for record with the county recorder of the county or city and county in which such property or some part thereof is situated, a claim of lien . . . ; in all cases, any of the following shall be deemed equivalent to a completion for all the purposes of this chapter: the occupation or use of a building, improvement, or structure, by the owner, or his representative; or the acceptance by said owner or said agent, of said building, improvement, or structure, or cessation from labor for thirty days upon any contract or upon any building, improvement or structure or the alteration, addition to, or repair thereof; the filing of the notice hereinafter provided

for. The owner may within ten days after completion of any contract, or within forty days after cessation from labor thereon, file for record in the office of the county recorder of the county where the property is situated, a notice setting forth the date when the same was completed, or on which cessation from labor occurred. . . . In case such notice be not so filed then the said owner and all persons deraigning title from or claiming any interest through him shall be estopped in any proceedings for the foreclosure of any lien provided for in this chapter from maintaining any defense therein based on the ground that said lien was not filed within the time provided in this chapter; provided, that all claims of lien must be filed within ninety days after the completion of any building, improvement or structure, or the alteration, addition or repair thereto.''

In the recent case of *Hughes Mfg. etc. Co.* v. *Hathaway,* 174 Cal. 44, [161 Pac. 1159], in which a petition for rehearing was denied on January 15, 1917, the court decided, after a review of said section 1187 of the Code of Civil Procedure, that a claim filed within thirty days after formal notice of completion by the owner (and, of course, the same rule would apply where notice of cessation from work was given) might be foreclosed as if filed within thirty days after the actual completion of the building (and, of course, the same principle is applicable in a case where the contractor had ceased to perform work and the statutory notice had been given). There were not successive liens filed in that case, as here, one prior and one subsequent to the owner's notice of completion, but the purpose and spirit of the statute were reviewed by Mr. Justice Shaw, in part, as follows:

''The ten days allowed for filing the notice of completion of such a contract begins to run at the time of its actual completion *by the contractor*. The lien claimant for materials furnished or labor done under such contract may not know the time of actual completion thereof, and the statute intends that he need not inquire diligently concerning it. He may watch the files of the county recorder and rely on the filing of the notice of completion, which, for the purpose of his time to file his claim of lien, *is* deemed to be the equivalent of the completion of the original contract under which he claims, and he may then file his claim within thirty days after the filing of such notice.

"If no notice of completion is filed, the claimant is only required to see that his claim is filed before the expiration of the period of ninety days after the completion of the building, that is, of thé building as a whole, as provided in the last clause of the section. If his claim is filed within that period and also within thirty days after the filing of the notice of completion of the contract under which he claims, he may rest secure that it is filed in time. If he files the claim within ninety days after completion of the building, and the owner fails to file a notice of the completion of the original contract under which the lien is claimed, within ten days after its actual completion or forty days after cessation of labor thereon, the claimant may rely on the estoppel created by the statute to prevent the owner from disputing the timely filing of the action."

The statute gives several starting points for the filing of the mechanic's or materialman's notice of lien, any one of which may be equivalent to *"a completion"*—not *the* completion— of the building. Unless the period is lessened by the owner's act in giving the formal notice, provided by the statute, of completion or cessation from the work, he is estopped to deny its timeliness if it be filed within ninety days of completion or abandonment. If Pope & Talbot had chosen to refrain from filing any claim at all until after the owner's act of giving notice of cessation from work, undoubtedly the claim of December 27th would have been entirely available and the owner might not complain. How, then, is he injured by the abandonment of the original claim and the filing of a new one timed by his own act which by the statute is made "equivalent to a completion"? We can discover nothing operating to his detriment. The first claim of lien was not available against him at the time of the suit because of the limitation of section 1190 of the Code of Civil Procedure, but even if it had been, no court would permit two recoveries for the same items. Under the statute a lien claimant may select any one of several times as "equivalent to a completion." It is our opinion that these periods are not each exclusive of all of the others or that action by the lien claimant measured from one period forecloses him from all resort to the other rights to which he may be entitled under section 1187. Nor do we conclude that because he has filed his claim within thirty days

of actual completion or abandonment of work on the building, he has inexorably set in motion the limiting restraint of section 1190 of the Code of Civil Procedure, against all of his rights. Rather do we regard each of those times and circumstances "equivalent to a completion" as setting in motion a new period for the filing of a claim, and that the limitation expressed in section 1190 applies to each of such claims as such and not to all rights which the claimant may possibly enjoy under any one of them.

The judgment is affirmed as to all appellants except Pope & Talbot. As to that corporation, plaintiff and appellant, it is reversed.

Shaw, J., Henshaw, J., and Lorigan, J., concurred.

ANGELLOTTI, C. J.—I concur in the opinion and judgment, in so far as the affirmance as to all the appellants except Pope & Talbot is concerned.

I dissent from that portion of our judgment which reverses the judgment of the superior court as to appellant Pope & Talbot. It seems clear to me that, upon the facts stated in the opinion as to the claim of such appellant, the superior court correctly held that the cause of action for enforcement of the lien was barred by the provision of section 1190 of the Code of Civil Procedure. The lien of that claimant was fully perfected by the first filing, that of November 9, 1912, and, by express provision of the section, the property subject thereto was absolutely freed therefrom by the failure to commence enforcement proceedings in the proper court within ninety days thereafter. That our statute, as held in *Hughes Mfg. etc. Co.* v. *Hathaway,* 174 Cal. 44, [161 Pac. 1159], authorizes a lien claimant to select any one of several events as equivalent to the completion, within a certain time from which he must perfect his lien by filing his claim, appears to me to be altogether immaterial to the question here involved. Of course, as there held, he may select, at his option, any one of the events so prescribed. But he has only one lien. And when, whatever selection as to date of completion he may make, he has perfected that lien by the filing of a proper claim, the statute (Code Civ. Proc., sec. 1190), begins to run against the lien itself, rendering it ineffectual for any purpose at the

expiration of ninety days in the event that no action is instituted within that time for its enforcement.

SLOSS, J.—I agree with the views expressed by the Chief Justice relative to the claim of Pope & Talbot.

I wish to express, in addition, my dissent from the court's decision on the claim of P. H. Murphy & Son. In my judgment, the firm name "P. H. Murphy & Son" showed "the names of the persons interested as partners," within the fair meaning of section 2466 of the Civil Code. I see no good reason for giving the section the strict interpretation adopted by the court. Anyone dealing with a firm called "P. H. Murphy & Son" would naturally assume (as was the fact here) that the firm was composed of two men named Murphy, P. H. Murphy being the father, and the other member his son. This assumption would be correct in all but very unusual cases. The partnership designation, therefore, disclosed the surnames of the partners, and this, we have held, is sufficient. (*Pendleton* v. *Cline*, 85 Cal. 142, [24 Pac. 659]; *McLean* v. *Crow*, 88 Cal. 644, 26 Pac. 596].)

Rehearing denied.