L. A. JESTER, Appellant, v. CLARA I. GRAY et al., Appellees.

CONTRACTS: Options—Non-Mutuality and Want of Consideration —Revocation. A written, exclusive option to purchase or sell property, for which option the optionee pays nothing and expends nothing except time and money spent by him in an effort to effect a sale, and wherein optionee assumes *no* obligation, may, without the consent of the optionee, be revoked by the optionor at any time before acceptance.

*Appeal from Polk District Court.*—THOS. A. GUTHRIE, Judge.

JANUARY 20, 1920.

REHEARING DENIED MAY 11, 1920.

SUIT in equity for specific performance. The defense was predicated upon various grounds. There was a decree for the defendants, dismissing the petition. The plaintiff has appealed.—*Affirmed.*

*Clark & Byers,* for appellant.

*Dale & Harvison,* for appellees.

EVANS, J.—I. Plaintiff's suit is predicated upon the following written contract:

"For value received, we hereby grant to L. A. Jester or assigns, the exclusive right to purchase or sell the following described real estate, to wit: The north sixty (60) acres of the southwest quarter of Section thirty-two (32) in Township seventy-nine (79) in Range twenty-three (23), Polk County, Iowa. The terms of this option are as follows: The total consideration to be paid for said land in case this option is exercised shall be thirty-seven thousand ($37,000.00) dollars, which shall be payable as follows: two thousand ($2,000.00) dollars, on or before June 1, 1915, and the balance of thirty-five thousand ($35,000.00) dollars on June 1, 1935, with interest at the rate of six per cent per annum, payable annually. In case this option is exercised the undersigned grantors agree to execute a contract of sale of said land upon the above terms, and to execute a deed to said land and to deposit the same in some bank in Des Moines, to be agreed upon by the parties to said contract, said deed and a copy of said contract to be held in escrow by such bank until the terms of said contract are fulfilled. Or at the option of the said L. A. Jester, or assigns, the grantors agree to execute and deliver to the said L. A. Jester or assigns upon payment of the two thousand

($2,000.00) dollars, as above provided for, a warranty deed to said land, and to take back a first mortgage on said premises for the balance of the purchase price, namely, thirty-five thousand ($35,000.00) dollars, payable as above indicated. In case this option is exercised the grantors agree to furnish an abstract to said premises showing good and merchantable title.

"Executed in triplicate at Des Moines, Iowa, this 25th day of March, 1915."

On May 25th, the foregoing contract was extended by the following writing:

"For a valuable consideration, this option is extended for a period of 15 days from the above-mentioned date of expiration, and, if accepted, on or before June 15, 1915, the grantors herein agree to execute the contract hereto attached and made a part hereof.

"May 25, 1915."

To this extension was appended a form of contract, unsigned, and with blank spaces for dates and signatures. On June 11, 1915, the plaintiff purported to accept the option and tender performance. The real estate described was owned in common by defendants Clara and Ruth Gray. The original option was executed by their father, Henry Gray, who assumed authority to represent them, and acted in good faith in their interest, as he believed. The extension above set forth was executed by Clara Gray. She also signed the same for Ruth Gray, assuming to represent her.

The pleadings made issues on the question of authority of the agent, and on ratification, and on false representations. We shall have no occasion to deal with the question of agency; nor was there any evidence of false representations. The brief of appellant bases its grounds of reversal wholly upon the issues of fraud, agency, and ratification. There is another issue made by the pleadings which is whol-

ly ignored in appellant's brief. It is whether the option was withdrawn, prior to its acceptance.

It was pleaded that the option contract lacked mutuality, and was without consideration, and that, long prior to its acceptance by the plaintiff, it had been withdrawn by the defendant. On that issue, the defendant Clara Gray testified as follows:

"After May 25th, when I signed this extension agreement, I next saw Mr. Jester, I think, on the 1st day of June, at his office. Miss Moss and I went over there to withdraw from the option, and I told him that that was my mission. He asked me what my reasons were, and I told him that, the first morning we were there, I was of the same mind; that I did not want to go into the proposition; that I did not want to enter into it. I told him that I wanted to withdraw from the option. That was the first day of June, 15 days before the option expired; and, at first, he was agreed that that was all right. He said he did not want to have any trouble about it. I told him I did not anticipate that there would or should be trouble; that I had come in time,—that is, before the 15th: and he said that he should receive something for his time and work; that he had been working on this since last fall: and I told him of course I did not know anything about the time he had spent on the work, because I had not heard of it in any way before the 19th of March. * * * My father and I saw Mr. Jester at his office the second of June. Father made the first statement that we wanted to withdraw; that I did not want to go on with the option or contract. There was a discussion more or less with them to this effect. Mr. Jester at that time was not as favorable to our going ahead. He said 'No;' that he would have to be considered; his time and all and labor in that would have to be considered. We found there wasn't any conclusion could be reached; that Mr. Jester would not consider that we had withdrawn from

the contract. I did not see him from that date to the time of the tender on June 11th, but I had a telephone communication in the meantime. He said, in that last interview with father and I in the office, that he thought we had better reconsider and go right on, and not say anything today, but call him by phone at 1:30 the following day or the next day. I called him the following day, and told him I would refer him to you, my attorney. He said there was no necessity of that. He seemed quite put out to think I had put it in my attorney's hands, and said that 'We will just fix it up, and there is no use of calling anyone in about that.' I did not say anything. Had nothing more to say."

Mabel Madden testified for the defendants as follows:

"I was formerly Mabel Moss. I live in the city. I am acquainted with Clara and Ruth Gray and their father. I met Mr. Jester on Monday, the 1st of June, 1915, at his office. Clara Gray was with me. She introduced me, and asked first to see the option, the paper that she had signed, because she was not clear as to what it was she had signed. and Mr. Jester said he did not have that paper with him,— that it was in the vault, I believe; but, anyway, we did not get to see the paper. Then Clara said she come over for the purpose of withdrawing, and he said, 'Well;' and he stood there a little while, and asked her why she wanted to withdraw—what her reasons were; and she told him; and he asked her over again that time, if she didn't consider him, because she said it was a business proposition with her; and finally his remarks were that she could withdraw, but because he had never had any lawsuit before, he certainly wouldn't want any with any of the Grays, nor a young lady, and that she could withdraw. As we were leaving, he said, 'Of course, I have spent all my time, and I have spent time since last fall;' and that he would expect some consideration for the time he had spent on the case, and Clara said that she couldn't pay for that."

In response to the foregoing, the plaintiff testified in rebuttal as follows:

"I did not, at any time or anywhere or to anybody, suggest or indicate in any way that anybody could withdraw from this contract."

"Cross-Examination.

"I remember saying to Miss Gray, in the presence of Mrs. Madden, that I had never had a lawsuit with anybody, and I did not want to have a lawsuit with one of the Grays. I said that, and it is true; and particularly that I did not want to have a lawsuit with a young lady."

It will be noted from the foregoing that the plaintiff's only denial is to the effect that he himself did not consent to the withdrawal of the option. In all other respects, the testimony of Mrs. Madden and of defendant Clara is undisputed.

If the option contract was, as a matter of law, revocable, it is apparent that Clara made an insistent effort to revoke the same. Formality was not required for such revocation. Her insistence upon revocation was revocation. If revocable, the consent of Jester was not necessary, nor was the effort of Clara to gain his consent material. The substance of this evidence is that Clara had two interviews with the plaintiff, on June 1st and 2d, respectively, wherein she insisted upon a withdrawal of the option. At the last interview, plaintiff asked that she reconsider, and let him know by phone, the following day. It appears also in the record that she did call him by phone, the following day, and advised him that she had placed the matter in the hands of her attorney, and that the plaintiff could confer with him. Ruth was absent from the state, and had been so absent from a time prior to the date of the original option. Clara also had been absent from the state for a long time prior to the date of the option. She returned on the morning of May 25th, the date on which she signed the

extension. The matter having been placed in the hands of her attorney, the plaintiff had an interview with the attorney, on June 10th. Ruth was expected home on the next day. The attorney advised the plaintiff that he would confer with his clients, as soon as Ruth came, and would advise the plaintiff on the result of the conference on Monday, June 13th. On June 11th, however, the plaintiff served upon Clara the notice of acceptance and tender. There is no question, upon this record, but that plaintiff understood, before he served such notice of acceptance, that Clara had declined to be further bound by the option. There was nothing more that she could have done to bring the withdrawal to the notice of the plaintiff. This was all that was necessary to make the withdrawal effective. We proceed to inquire, therefore, whether the contract was revocable.

II. The contract purported to be an option. It contained no promises to be performed by the optionee. It is conceded by plaintiff that nothing was paid therefor. The only consideration contended for is a matter of legal conclusion, based upon the following testimony of the plaintiff:

"I did not pay Ruth and Clara Gray anything in money for this original option. I expended a good deal of time working, partially before and partially after I talked with Henry Gray."

The foregoing testimony is amplified in the reply argument of appellant by a statement that he was promoting an addition, which would include the tract in question and adjoining tracts, and that this was known to the contracting parties, and that he was also looking for purchasers for the tract. If a consideration for the option can be thus supplied, with mere subsequent voluntary conduct of the optionee, then an option offer would seldom be revocable. It may fairly be presumed that every optionee does something, after obtaining his option, looking to his possible acceptance

thereof. In *Axe v. Tolbert,* 179 Mich. 556 (146 N. W. 418) it was expressly held that:

"Time and money spent by a party in trying to sell property for which he holds an option cannot be construed as a consideration to the party from whom he has secured the option."

We agree with that view. An option without consideration is a mere offer, and is not binding until its acceptance. It necessarily follows that it may be withdrawn before its acceptance. In *Hopwood v. McCausland,* 120 Iowa 218, we said:

"An option is not a sale. It is not even an agreement for a sale. At best, it is but a right of election in the party receiving the same to exercise a privilege, and only when that privilege has been exercised by acceptance does it become a contract to sell."

There was not a moment, prior to June 11th, when the plaintiff was bound to anything under this option. He had parted with nothing, and had made no promises. There was, therefore, no consideration, and the option was revocable.

Even in reply argument, the appellant has declined to be drawn into argument on this issue. He has been content to characterize the position of appellee as inconsistent, and therewith to dismiss its consideration. At first sight, there seems a measure of inconsistency in the successive interviews, where one was sufficient; but this would go only to the credibility of the testimony. Its credibility, however, is vouched for by the plaintiff himself, by his limiting his denial thereof to the question of his own consent. Accepting his testimony that he did not consent to a withdrawal, the fact remains that he asked Clara to reconsider her decision, with more or less importunity. This latter request accounts for the telephone interview. It was not consistent in Clara to try to obtain his consent. She might quite naturally have felt uncertain about her rights without his consent.

She had asked for the instrument itself at the first interview, and had failed to get it. She testified that he "at first" consented. Afterwards, he protested that he was entitled to consideration. The situation confronting her was perplexing enough, if she had been experienced in the business. This was her first real estate transaction. The fact, therefore, that she did more than was required of her, or that she sought the plaintiff's consent when she did not need it, is not very glaring as an inconsistency.

We reach the conclusion that the contract in question was a revocable option, and that it was revoked before acceptance.

The decree entered below is, therefore,—*Affirmed.*

WEAVER, C. J., LADD, GAYNOR, PRESTON, SALINGER, and STEVENS, JJ., concur.

### Supplemental Opinion on Rehearing.

EVANS, J.—Complaint is made in the petition for rehearing that our opinion heretofore filed failed to deal with one issue in the case. The record discloses that the plaintiff filed an amendment to his petition in the court below, whereby he made Henry Gray a party defendant, and whereby he claimed to recover from him and from the original defendants the sum of $1,000. upon the following agreement:

"We, the undersigned, hereby agree to pay L. A. Jester the sum of one thousand ($1,000.00) dollars as consideration for services in case he exercises or causes to be exercised the option to purchase or sell this day given to him by the undersigned on the premises described as the north 60 A. of the S. W. quarter of Sec. 32, Twp. 79, Range 23, Polk County, Iowa. Said payment to be made at the time said option is exercised.

"Dated at Des Moines, Iowa, this 25th day of March, 1915.

"[Signed] Clara I. Gray
"Ruth Gray,
"By Henry Gray, Agent."

The agreement above set forth was contemporaneous with the execution of the original option contract, and, in legal effect, was a part of the same transaction.

As respects the obligation thereunder of the principal makers, our conclusion announced in the original opinion as to the legal effect of the option contract is necessarily determinative of the legal effect of this contract as a part thereof. The promise to pay, herein set forth, was contingent and conditional upon a completed sale.

The same reason would stand in the way of any recovery as against Henry Gray. As to him, there is the further reason that he signed the contract only as the purported agent of his principals. It is elementary that an agent is not ordinarily liable for the contract of his principal. It is only when he conceals the agency or withholds the name of his principal or exceeds authority or is guilty of some fraud as an inducement to the contract that a liability may arise as against him. Nothing appears herein to take this case out of the ordinary rule. Though it be true that an issue was made in the pleadings on the agent's authority to enter into the option contract for his principals, yet such issue was not pressed in the evidence for defendants, and the disposition of the case did not turn upon such issue. Even if the plaintiff were now able to prove that the agent did exceed his authority, and did thereby render himself liable in lieu of his principals, still he would be liable only to the same extent as the principals *would have been* if the purported act of agency had been authorized by them. Inasmuch as we dispose of the main case against the principals on the assumption that the act of agency was authorized,

and find, nevertheless, that the option contract was duly revoked by the principals, nothing is left upon which liability can be predicated, either against them or against their purported agent. The finding of due revocation of the option contract carries down plaintiff's entire cause of action thereon, and leaves no remnant.

The petition for rehearing must, accordingly, be overruled.