## BATTLE *et al. v.* McARTHUR *et al.*

*(Circuit Court, E. D. Missouri, N. D.* December 7, 1891.)

**1. CONSTRUCTION OF RAILROAD—CONTRACTOR'S LIEN—FILING ACCOUNT.**
Under Rev. St. Mo. 1879, § 3202, providing that the lien of a railroad contractor must be filed within 90 days next after the completion of the work, etc., and that all actions to enforce such liens must be commenced within 90 days after filing the lien, and prosecuted without unnecessary delay to final judgment, and that no lien shall continue to exist for more than 90 days after it is filed unless suit is instituted within such time, (Id. § 3205,) successive liens for the same labor and materials cannot be filed. The filing of one account, sufficient to create a lien under the statute, exhausts the contractor's power to incumber the property; and the 90 days run from such time, and cannot be extended by the filing of an amendment or a new lien within the original 90 days.

**2. RECEIPT IN FULL—EFFECT.**
During the execution by subcontractors of a contract for railroad grading frequent complaints were made by them as to the manner in which the chief engineer estimated certain kinds of excavation, and these complaints were made to the contractor, and by him to the railroad company; and the contractor succeeded in having the estimates raised in some instances. *Held,* that a receipt "in full," given by the subcontractors to the contractor after knowledge of all the facts, and tender and payment of an amount on the basis of the engineer's final estimates, was binding between the parties.

**3. COMPROMISE—CONSIDERATION.**
Even though a person does not receive all that is legally due to him, yet, where the sum actually due is in dispute, the avoidance of litigation is a sufficient consideration to support a settlement fairly made with full knowledge of all the facts.

In Equity. Suit by Battle & Cameron against McArthur Bros. and the Chicago, Santa Fe & California Railway Company to enforce a mechanic's lien.

*James H. Anderson,* for plaintiffs.

*James C. Davis,* for McArthur Bros.

*Gardiner Lathrop* and *Ben Eli Guthrie,* for Chicago, S. F. & C. Ry. Co.

THAYER, District Judge. Two questions are presented in this case which do not arise in either of the other cases just decided,—*Lewis v. Railway Co.,* 49 Fed. Rep. 708, and *Summers v. Same,* Id. 714.

1. In the first place, the railway company contends that these plaintiffs did not bring their suit against it within the period limited by law, and that their alleged lien was for that reason lost. The court concludes that this point is well taken. So far as the railway company is concerned, the suit is simply one to enforce a lien against the property of the company located in this state, which lien exists, if at all, by virtue of local laws. *Vide* article 4, c. 47, Rev. St. Mo. 1879. These plaintiffs have no lien against the property of the railway company, either at common law or in equity; nor have they any right of action against the railway company, except such as is given by the Missouri statute creating a lien. In other words, the proceeding, as against the company, is purely statutory, and, to be effectual, must have been brought in the manner and within the period prescribed by the laws of this state. The federal courts can enforce liens created by local laws, but they will only do so where the proper steps have been taken under such laws to render them enforceable in the state courts. To entitle a railroad contractor to a lien under the laws of this state, the lien must be filed "within ninety days next after the completion of the work, or after the materials were furnished," (section 3202, Rev. St. Mo. 1879;) and all actions to enforce such liens must be commenced "within ninety days after filing the lien, and prosecuted without unnecessary delay to final judgment," (section 3205, Id.) As if to render the injunction more emphatic, section 3205 further declares that "no lien shall continue to exist * * * for more than ninety days after the lien shall be filed, unless within that time an action shall be instituted thereon. * * *" Now, it cannot be admitted that a railroad contractor may file any number of liens for the same labor and materials, and against the same property, within the 90 days after his work is completed, and subsequently elect on which of the liens so filed he will bring suit. An account for work and materials, when filed with the clerk of the circuit court of any county through which the railroad runs, operates to fix a definite charge upon the property outside of as well as within the county, for the sum stated in the account. It operates as a mortgage upon the entire line of road within this state, and is even more far-reaching in its effects than a mortgage or other incumbrance. *Vide* section 3201, Id. In the very nature of things, successive liens for the same labor and materials cannot be filed. The filing of one account that is good and sufficient to create a lien under the statute and satisfy its requirements exhausts the contractor's power to incumber the property. The first good and sufficient lien so filed, sets the statute of limitations in operation, and, unless suit is brought within 90 days thereafter, the lien ceases to exist by the express provisions of the statute. It is unnecessary to decide whether a lien account, when filed, may be corrected in matters of mere detail by subsequent amendments, filed within the 90 days allowed for filing a lien, for, even if such amendments are permissible, they should obviously be filed in the same county where the original account is recorded; and, in any event, the time limited for bringing suit must be computed from the date of the first filing. The amendments would take effect by relation

as of that day, if it is permissible to amend such statements of account. The construction which the court thus gives to the railroad lien law seems to be the only reasonable interpretation of the statute, and it is also the construction heretofore placed upon the local mechanic's lien law by the supreme court of this state. *Mulloy* v. *Lawrence*, 31 Mo. 583; *Davis* v. *Schuler*, 38 Mo. 24. It is proper to add, in this connection, that the mechanics' lien law was passed in the year 1857, the railroad lien law in 1873, and it is a well-known fact of local history that the later law, in all of its essential features, was modeled after the former, so that it may be safely assumed that the supreme court of the state would construe the railroad lien law as this court construes it. Inasmuch, therefore, as the record in this case shows that a good and sufficient lien account was filed by Battle & Cameron in Scotland county on June 4, 1888, and that no suit to enforce such lien was instituted until September 22, 1888, the lien had ceased to exist before this action was instituted, and these plaintiffs are entitled to no relief as against the railway company.

2. McArthur Bros., (against whom there may be a recovery in this suit notwithstanding the failure of the lien,) on their part, insist that they have made a settlement with Battle & Cameron which is final and conclusive. The facts bearing on that issue are found to be as follows: The controversy concerning loose rock classification was one which arose early in the progress of the work, and continued to the end. Very soon after that controversy arose (certainly as early as July 1, 1887) these plaintiffs, as well as other subcontractors, became aware of the manner in which the amount of loose rock was being estimated by the engineers; that is to say, they knew that the amount was being estimated on the percentage theory, and that the engineers regarded the plowing test as applicable to hardpan, cemented gravel, etc. The court cannot conceive it to be possible, in view of all the facts and circumstances of the case, that they did not have such information for some months prior to January 1, 1888. These plaintiffs made numerous complaints after May, 1887, with respect to the quantity of loose rock allowed in the various monthly estimates. They appear, on one occasion at least, to have distinctly made the claim that hardpan should be estimated as loose rock without reference to the plowing test, although, as a rule, their complaints seem to have been directed rather to the amount of the allowance than to the method of estimation. Such complaints as Battle & Cameron addressed to McArthur Bros. the latter firm likewise made to the railway company, sometimes in even more forcible language. McArthur Bros. were equally interested in securing a more liberal classification, and they seem to have made an honest effort on all occasions to accomplish that result. Thus matters stood until the work was practically concluded. It admits of no doubt that a conference was held between Battle & Cameron and McArthur Bros., after the work was about finished, with a view of ascertaining what percentage of loose rock in the classification of certain cuts on the line of plaintiffs' work would be satisfactory to them, or would be accepted as a settlement of the existing controversy. There can be no doubt, I think, that Battle & Cameron at

that conference agreed to a certain classification, which was put in the form of a tabulated statement, showing the percentage of loose rock claimed in the several cuts, and this statement was undoubtedly forwarded to the chief engineer of the railway company by McArthur Bros. The percentage of loose-rock classification thus demanded was not allowed, but it caused the chief engineer to raise the classification some 20 per cent., and that increase entered into the final estimate. When the final estimate was received, McArthur Bros. exhibited it to the plaintiffs. The latter were not satisfied, and disputed its accuracy. On the other hand, McArthur Bros. represented that, even if it was unsatisfactory, it was the best allowance that they had been able to obtain after proper efforts, and that, upon the whole, they considered it a fair estimate. They also contended (as they had always done with their subcontractors) that by the terms of their contract with Battle & Cameron the decision of the engineer on questions of classification was conclusive, and that they were not bound to pay more than the amount shown to be due by the final estimate. The result of the interview was that Battle & Cameron accepted the sum of $6,746.39 tendered to them, (that being the amount due according to the final estimate,) and gave a receipt to McArthur Bros., which was expressed to be "in full for the balance due us on contract for grading sections 155 to 165, inclusive." When Battle & Cameron signed this receipt, it is possible, I think, that they may have intended to sue the railway company. They may have supposed at the time that they could maintain such a suit notwithstanding the settlement with McArthur Bros.; but the court is fully persuaded that they did intend to release McArthur Bros. from further liability under the contract, and that they left the members of that firm under the impression, when the money was paid, that, so far as they were concerned, the controversy was finally adjusted and settled. In view of the premises, the court concludes that there can be no recovery against McArthur Bros. Even though a person does not receive all that is legally due to him, yet, where the sum actually due is in dispute, the avoidance of litigation is a sufficient consideration to support a settlement fairly made with a full knowledge of all the facts on which the person's legal right to exact a larger sum depends. If this was not the law, no compromise would ever be binding. In this instance there was a controversy as to how much McArthur Bros. were liable to pay these plaintiffs under the terms of the construction contract. All of the facts on which the decision of that question depended were as well known to one party as the other, and they were quite as well known in May, 1888, as they are to-day. No facts known to McArthur Bros. were concealed; no undue advantage was taken of these plaintiffs; and no fraud was practiced. Under these circumstances it must be held that the settlement effected in May, 1888, is conclusive as between the parties thereto, and the complaint will accordingly be dismissed as to both of the defendants.