MASON, Respondent, v. MARTIN (SECURITY BANK OF WINNER, Garnishee), Appellant.

(232 N. W. 29.)

(File No. 7025. Opinion filed September 2, 1930.)

300

*P. A. Hosford*, of Winner, for Appellant.
*Windsor Doherty,* of Winner, for Respondents.

BROWN, P. J. ■ Thomas E. Mason and his son J. E. Mason, doing business as a partnership under the firm name of "Mason's Funeral Home," brought this action against appellant, Eva Martin, for an alleged indebtedness growing out of the burial of her deceased husband. As one defense appellant pleaded failure

of plaintiffs to comply with the statute requiring filing of a certificate of the true names of the firm. Applicable to this case, Rev. Code 1919, § 1334, provides that "every partnership transacting business in this state under a fictitious name, or a designation not showing the names of the persons interested as partners in such business, must file with the clerk of courts of the county in which its principal place of business is situated * * * a certificate stating the names in full of all the members of such partnership, and their places of residence, and publish the same once a week for four successive weeks, in a newspaper published in the county," and section 1336 provides that, until such certificate has been filed and publication made, no action shall be maintained by such partners on any contract made or transaction had in the partnership name. It is conceded that the contract or transaction involved was had in the partnership name, and that section 1334 has not been complied with by plaintiffs. The name "Mason's Funeral Home" in itself gives no indication that it designates a partnership. It would be equally applicable and appropriate to a corporation. Perhaps a reasonable inference might justify the belief that the name was meant to designate a single individual, but we think it clearly was not a designation showing the names of the persons interested as partners in the business, and that it was better adapted to give the impression that the business was that of an individual rather than that of a partnership. In Patterson v. Byers, 17 Okl. 633, 89 P. 1114, 10 Ann. Cas. 810, it was held (Burford, C. J., not sitting and Burwell, J., dissenting) that the name "Patterson Furniture Company," under which two persons named Patterson transacted a partnership business, was neither a fictitious name nor a designation not showing the names of the partners. The Oklahoma court seems to base its decision in the Patterson Case largely on what it deemed to be the construction placed on the statute by the Supreme Court of California before the statute was adopted by Oklahoma from California, but in Schwarz & Gottlieb v. Marcuse, 175 Cal. 401, 165 P. 1015, the Supreme Court of California (in bank) designates the decision in Patterson Furniture Company Case as a "remarkable conclusion," and in Andrews v. Glick, 205 Cal. 699, 272 P. 587, the Supreme Court of California (again sitting in bank) holds that the name Andrews-Cordano Plumbing Company, as the name of a partnership composed of Harry W.

Andrews and Frank Cordano, does not designate the names of the persons interested as partners in the business, and that a partnership conducted under such name cannot maintain an action on a contract had in the partnership name.

In the instant case appellant requested a finding which was strictly in accordance with the evidence on this point. The trial court refused to make such finding and made no finding on this branch of the case. In this the court erred. Plaintiffs were not entitled to maintain this action, not having filed a certificate as required by section 1334, and for this reason alone the judgment and order appealed from must be reversed and the action dismissed.

But the cause of action remains, and the plaintiffs by filing the certificate required by section 1334 may commence a new action, and, inasmuch as the questions involving the merits have been fully argued upon this appeal, and are likely to arise in another action should one be commenced, we deem it proper to indicate our views on those questions.

Thomas Mason was not a licensed embalmer in this state. His son J. E. Mason was. Both worked on the preparation of the body of deceased for burial. Appellant contends that, because the statute (Rev. Code 1919, § 7785) makes the practice of embalming without a license a misdemeanor, no recovery can be had by plaintiffs. There is nothing in the statute forbidding a licensed embalmer having assistance of one who is unlicensed in the performance of his work. J. E. Mason, who was a licensed embalmer, had the responsibility for that work, and assistance therein by Thomas Mason did not contravene any law.

One of the findings of the trial court is that on or about January 2, 1928, defendant entered into an agreement with plaintiffs by which she purchased from plaintiffs a casket, suit, vault, and flowers, and engaged plaintiffs to do the necessary work in connection with the burial of her deceased husband for an agreed price of $410. We find no evidence in the record that will sustain this finding. Included in plaintiff's total bill was a burial vault for which the sum of $100 was charged. Plaintiffs' own testimony in regard to this vault is that, at the time of selecting the casket, defendant said she did not know whether she would want a vault or not, and she at no time agreed to buy or take a vault. She was

the second wife of deceased. A married son by the former wife was present at the time of the selection of the casket. This son said that they would let plaintiffs know later about the vault. From then on the son seems to have taken charge of the funeral arrangements. Thomas Mason testifies that this son came later and ordered the vault, and that the burial was from a church and in a cemetery designated by him, that defendant was not present at the funeral. There is no evidence in the record that defendant at any time purchased the vault or had any connection with its purchase. It is true that Thomas Mason testified that after the funeral was over she went with him with the insurance policies to a bank in Winner, and that there an arrangement was made with Mr. Kares, vice-president of the bank, that he should get the money on the insurance policies and from this money deduct the amount of plaintiff's bill, $410, and that defendant agreed to this. But her unexecuted agreement, without any new consideration, to pay for the vault for which she was not liable, cannot be enforced against her. The evidence supports the finding that she is liable for all the bill except the vault.

There were two so-called insurance policies; one is designated as "Certificate 166, Circle 7," issued by the Union Aid Life Insurance Company of Rogers, Ark. The total sum realized on this was $451. The other policy was for $1,000 in the Brotherhood of American Yeomen. Deceased had a loan of $59 on this, and the amount realized on this policy was $941. Both of these amounts were procured by defendant. The $941, together with $100 which she had, in addition to what was realized on the insurance, defendant deposited in the Security Bank at Winner, and this deposit was garnished by plaintiffs when they commenced the present action. Defendant in proper time made a claim of exemption and schedule of all her property showing that all the property she had at the time of this exemption claim was a small amount of household furniture of the approximate value of $50, and the $1,041 in the bank against which checks for $116.30 had been issued, and also the right to the proceeds of the certificate in the Union Aid Life Insurance Company, which at that time had not been paid, and that she claimed the whole of said property as exempt. The furniture and the $100 she had outside of the insurance money would clearly be exempt, and no controversy is raised

as to that exemption, nor as to the $451 received from the Union Aid, nor do respondents deny that the $941 insurance money received from the Brotherhood of American Yeomen is likewise exempt by the terms of our statute. But they contend that defendant waived the exemption as to this money. Leaving out of consideration for the present the fact that the money in controversy was the proceeds of life insurance, and conceding that defendant would be entitled under the general exemption law to an exemption of $750, it is clear that under the general exemption law alone defendant's schedule of property would show a surplus over the general exemption sufficient to pay the amount for which she would be liable to plaintiffs. But defendant contends that under the provisions of Rev. Code 1919, § 2661, as amended by chapter 148 of the Laws of 1923, the whole of such insurance money is exempt. This section as thus amended reads as follows: "The proceeds of any insurance upon the life of any person, residing in this state at the time of his death and who leaves a surviving widow, husband, or minor child or children, payable upon his death to his order or to the order of his assigns, estate, executor or administrator, and not assigned to any other person, shall, to any amount not exceeding Five Thousand Dollars ($5,000.00) inure to the use of such surviving widow, husband, minor child or children; and to such amount shall not be subject to the payment of any debt of such decedent, or of such surviving widow, husband, minor child or children." It will be observed that this section applies only to the proceeds of life insurance payable to the order of deceased or to the order of his assigns, estate, executor, or administrator. Prior to the amendment of 1923 the section terminated with the sentence, "and to such amount shall not be subject to the payment of any debt of such decedent." The amendment added the words, "or of such surviving widow, husband, minor child or children." Prior to the amendment the section provided only for exemption from the debts of decedent, and the application of the section was apparently confined to life insurance payable to the order of decedent or to the order of his assigns, estate, executor, or administrator, because, if the insurance was payable to the surviving widow, husband, minor child, or children, they would take the same as their own property, and it would not be subject to the debts of the decedent, and there would be no need of exemption from the

debts of the decedent the proceeds of the insurance that did not belong to his estate. In enacting the amendment of 1923, making the proceeds of insurance described in section 2661 exempt also from debts of the surviving widow, husband, minor child, or children, the Legislature does not seem to have had in contemplation the case of life insurance payable directly to a surviving widow, husband, minor child, or children, and no legislation exists exempting the proceeds of life insurance, payable directly to such parties, from the debts of the beneficiary. The policies or certificates in the instant case appear from the record to have been payable directly to defendant and not to the estate of deceased. Therefore the provisions of section 2661, as amended, do not apply in this case.

Laws of 1919, c. 232, § 21, relating to fraternal benefit societies, provides that: "No money or other benefit * * * to be paid * * * by any such society shall be liable to attachment, garnishment or other process, or be seized, taken, appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of a member or beneficiary, * * * either before or after payment." In First National Bank v. Halstead, 56 S. D. 422, 229 N. W. 294, we held this law to be valid and not in violation of any constitutional provision, and we think it forbids garnishment for any debt of the beneficiary contracted at least prior to the receipt of the money by the beneficiary. In this view the insurance money received by defendant from the Brotherhood of American Yeomen is exempt if the organization is a fraternal benefit society, as defined by chapter 232, Laws 1919 (section 1). Whether it is or not does not appear from the record on this appeal.

Respondents' claim that defendant waived the exemption on this insurance money is based entirely upon the claim that she agreed to pay respondents' bill out of the insurance money. This agreement, according to the testimony on behalf of plaintiff, was made after the indebtedness had been incurred. It is wholly executory and was founded on no new or additional consideration, and we do not think such agreement amounts to a waiver of her right to claim the insurance money as exempt. Even if such agreement could be considered as a waiver of the exemption, such waiver is revoked by defendant's refusal to apply the money in payment of the bill. In 25 C. J. 121, § 210, it is said: "It would seem clear that consent that exempt property may be levied upon and

sold, if not supported by a consideration, may be revoked at any time before it is acted upon, and so it has been held. And where a waiver implied from the conduct of defendant is without consideration, it is revocable."

The judgment and order appealed from are reversed, and the trial court directed to dismiss the present action.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.