[Civ. No. 18260.   First Dist., Div. One.   June 9, 1959.]

RANDOLPH C. DOHERTY et al., Respondents, v. CHARLES HUGH CARRUTHERS et al., Appellants.

David D. Ring for Appellants.

David B. Fyfe for Respondents.

WOOD (Fred B.), J.—Defendants contracted with Jack Bried, the original contractor, for certain repairs and improvements on their real property. The contract contained the following provision: "Notice of completion to be filed by this contractor [Bried]." Bried entered into subcontracts with plaintiffs Randolph Doherty and Burt C. Wheeler for materials and with plaintiff Ernest Ongaro for materials and labor.

The work of improvement was completed August 9, 1955. On October 17, a notice of completion, reciting that the work of improvement was completed on October 14, was filed by Bried. It was signed "C. Hugh Carruthers by Jack Bried (As Owner's Agent)." Plaintiffs filed their claim of lien on November 16, 1955; i.e., within 30 days of the filing of notice of completion, 99 days after actual completion.

The applicable statute* declares that the "owner shall within 10 days after the completion of the work of improvement file for record a notice of completion. . . . If such notice be so filed, then . . . [certain exceptions not here material] . . . every person, other than an original contractor, claiming the benefit of this chapter must within 30 days after the date of filing for record such notice, file for record his claim of lien. If such notice be not so filed, then . . . [certain exceptions not here material] . . . all persons claiming the benefit of this chapter shall have 90 days after the completion of such work of improvement within which to file their claims of lien." (Code Civ. Proc., § 1193.1, subd. c.)

The notice of completion is filed in the office of the county recorder. It must be signed and verified by the owner "or some other person on behalf of the owner" (§ 1193.1, subd. f, as amended in 1951), changed to "or his agent" by the 1955 amendment of section 1193.1. This notice must, among other things, set forth "the date of completion of" the "work of improvement," but "the recital of an erroneous date of completion shall not affect the validity of the notice if the true date of completion is within 10 days preceding the date of filing for record such notice." (§ 1193.1, subd. f.)

In the instant case, the notice of completion, having been filed 69 instead of 10 days after completion, was invalid. It therefore failed to impose the 30 day limitation for the filing of liens. Accordingly, the lien claimants had the full 90-day period following actual completion (August 9), within which to file. That period expired November 7. Their filing on November 16 was, therefore, nine days too late, unless the owners are estopped from asserting that October 14, the date recited in their notice of completion, was not the true date of actual completion. The judgment herein is predicated upon such an estoppel.

▓ The trial court found that the notice of completion was recorded by Bried "acting as agent of defendants," and that although completion actually occurred on August 9, 1955, the "defendants did not so notify plaintiffs . . . nor did . . . defendants at any time notify plaintiffs . . . that the Notice of Completion . . . did not set forth the actual

---

*Code of Civil Procedure, section 1193.1, as amended by Stats. 1951, ch. 1376, p. 3290; operative until September 7, 1955, the effective date of the 1955 amendment (Stats. 1955, ch. 1511, p. 2749).

The 1955 amendment does not appear to have effected any change significant to us in the present inquiry.

date of completion." The court concluded that the defendants "are estopped to deny that the Notice of Completion . . . was not a valid Notice . . . or that completion did not actually occur on October 14, 1955, the date specified therein."

The evidence supports these findings and conclusions. Defendant Charles Carruthers testified that when he entered into the contract he was familiar with the requirement of law concerning the filing of a notice of completion. He knew that the purpose of filing such a notice was to give persons who had unpaid bills an opportunity to file a lien against the property. He left up to Mr. Bried solely and entirely the matter of recording the notice of completion. He had no discussion with Bried on that subject except when they were within a few days of finishing the job and Bried said he would file the notice within the next few days. Carruthers did not ask Bried to furnish him a copy of the notice when filed, nor to advise him as to the date of filing the notice. "I left it up to him. It was agreed he would file it. It was part of our contract [that he was to file the notice of completion]." Carruthers testified that when on August 11, 1955, he made the fourth payment to contractor Bried he did not inquire whether there were any outstanding unpaid bills for labor or materials, nor as to who had furnished the work or materials, nor whether Bried had recorded the notice of completion. He merely made the fourth payment on the basis that the work had been completed on August 9. When the final payment was made (September 11) Carruthers did not inquire of Bried whether he had recorded the notice of completion nor did he inquire if there were any unpaid bills. He made his final payment to Bried upon Bried's representation that 35 days had elapsed since completion of the contract. Carruthers did not until December 14 inquire at the recorder's office whether a notice of completion had been filed. On December 14, he for the first time learned about the notice that Bried had filed. Prior to then he made no inquiry as to whether a notice of completion had been filed. Also, that was the first day that he had notice that there were any unpaid bills.

Plaintiff Doherty testified that prior to the recording of the notice of completion on October 16, he had no knowledge that the work had been completed. On learning of the recordation of the notice setting forth October 14 as the completion date, he carried his time for filing his claim of lien as 30 days from the recording of the notice on October 16.

William A. Gable, on behalf of plaintiff Ernest Ongaro,

testified that he had a service which lists documents recorded each day. By examining that service he ascertained that a notice of completion was filed. It is the custom for him to follow the recording data in the recording office as to completion and from that information he carries his time to file liens. This service is gotten out by the Marin County Credit Association. Until he learned about it from this service he knew nothing about actual completion of the job. He relies entirely on that publication to give him his time to commence filing. He did not recall an occasion where it developed that the notice of completion was not filed until months after completion. It has been his experience that he can rely on that data because the contractor will get it on file as soon as he can.

Upon hearing this evidence the trial judge, Honorable Thomas F. Keating, pronounced judgment for the plaintiffs and said: "I think justice dictates that where [one of] two innocent parties are going to be injured . . . I think it will have to be the one who might be charged with having allowed the situation to develop. These materialmen and subcontractors actually had no opportunity whatever to protect themselves in the established way and they took advantage of the established way of doing things and filed their notice within time." We concur.

That Bried had *express* authority, unrevoked authority, from the owner to write, sign, verify and file for record the notice of completion of behalf of the owner, abundantly appears from the written contract between Bried and the owner and from the owner's testimony. This agency was created by "a precedent authorization" (Civ. Code, § 2307) and therefore, contrary to defendants' contention, involves no question of ratification. Also, we are dealing with "actual authority" which the principal "intentionally" conferred "upon the agent." (Civ. Code, § 2316.)

Accordingly, this agent had authority to make "a representation respecting any matter of fact, not including the terms of his authority, but upon which his right to use his authority depends, and the truth of which cannot be determined by the use of reasonable diligence on the part of the person to whom the representation is made." (Civ. Code, § 2319.) Given authority to prepare and file the notice, Bried of course had authority to state the facts (including the date of completion) which the statute expressly required such a notice to set forth.

In such a case, the provisions of section 2330 of the Civil

Code apply: "An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." (See also *Worthen* v. *Jackson*, 139 Cal.App.2d 615, 617 [293 P.2d 797], and cases therein cited; *Dastagir* v. *Dastagir*, 109 Cal.App.2d 809, 821 [241 P.2d 656]; 2 Cal.Jur.2d 833, Agency, § 143; 2 Am.Jur. 270, Agency, § 347.) We conclude that this notice had the same effect in every respect as it would if the owner had personally written, signed, verified and recorded it.

■ Lien claimants are entitled to watch these filings in the office of the county recorder and rely upon them. (*Hughes Mfg. etc. Co.* v. *Hathaway*, 174 Cal. 44, 48 [161 P. 1159]; *Schwarz & Gottlieb, Inc.* v. *Marcuse*, 175 Cal. 401, 414 [165 P. 1015].)

The notice filed in the instant case was regular upon its face. It told the lien claimants that it was timely filed (within 10 days after completion of the work of improvement), therefore, valid and fully effective. The conclusion would irresistibly follow, in the mind of a lien claimant, that he could safely file his claim of lien "within 30 days after the date of filing for record such notice" (Code Civ. Proc., § 1193.1).

■ Such representations of fact made in writing, "signed and verified by the owner or his agent" and filed for record on behalf of the owner (§ 1193.1) furnish just as effective a basis for estoppel as the oral representations made in *Hubbard* v. *Lee*, 6 Cal.App. 602 [92 P. 744] and 10 Cal.App. 477 [102 P. 528]. There, an owner who declared that the buildings were not completed and that he would not accept them until certain work was done was deemed estopped to deny the validity of a claim filed by contractors who relied upon such declarations in furnishing materials and in calculating the time for the filing of their claims.

■ Defendants contend there is no room for estoppel under this statute. They say that a tardy filing of the notice of completion is void and cannot furnish any basis for an estoppel. They rely upon *C. Ganahl Lumber Co.* v. *Thompson*, 205 Cal. 354 [270 P. 965]. That case does not support their thesis. The applicable statute was section 1187 of the Code of Civil Procedure, as amended by the Statutes of 1919, chapter 146, page 190. It authorized the subcontractor to file his claim of lien after he had completed his work and until 30

days after completion of the work of improvement; directed the owner to file his notice of completion within 10 days after completion of the work, specifying the information it must set forth; declared that the filing of such a notice was the equivalent of completion; and said that if "such notice be not so filed," lien claimants "shall have ninety days after the completion of said improvement within which to file their claims of lien." The work was in fact completed September 21, 1923. The owner filed notice of completion on November 30, some 60 days too late. The court held, on the basis of earlier decisions, that this notice was invalid because not filed within the 10 days and could not be treated as the equivalent of completion. The result was that the lien claimant had until 90 days after actual completion (December 19) within which to file its claim. Plaintiff filed too late. It did not file until December 27.

Estoppel was apparently urged against the defendants upon the ground that their notice of completion declared that completion occurred on November 15. Of this contention the court made the following disposition: "Even if it be assumed, without deciding, that the owners by reason of their tardy filing of the notice of completion are estopped to deny that the building was completed on November 15, 1923, as recited in such tardy notice of completion, it would avail the appellant nothing for its claim of lien would not, even then, have been filed within 30 days after such completion as required by section 1187." (P. 356 of 205 Cal.) By the latter remark the court apparently had reference to the forepart of section 1187 which said that a subcontractor would have until 30 days after completion for the filing of his claim of lien. If the owner were held to the declaration in his recorded notice that November 15 marked the date of completion, plaintiff subcontractor would have had until December 15 to file his claim, which he did not do. He delayed his filing until December 27.

Perhaps the lack of a basis for an estoppel in the Ganahl case may be found in the fact that the owner's notice of completion showed upon its face it was being filed at least five days too late. Filed November 30, it set forth the completion date as November 15. That, conceivably, may have been regarded as a suspicious circumstance which should have put the lien claimant upon his inquiry. There is no such circumstance in our case. Here, the notice was filed October 17 and represented that the work was completed Oc-

tober 14, a filing well within the prescribed 10-day period. In our case the 30-day limitation period runs from the date of filing of the notice, not from the date of completion of the work of improvement. Also the provision that the filing of the notice is the equivalent of completion has been deleted from the statute since the date of decision in the Ganahl case.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 5, 1959.

