Opinion
 

 CORRIGAN, J.
 

 In this case arising from a violation of the state’s prevailing wage law (Lab. Code, § 1720 et seq.),
 
 [1]
 
 we conclude the complaint against Fidelity Roof Company (Fidelity) was not timely filed. We further hold that the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) may collect unpaid wages from the payment bond surety under the circumstances presented here.
 

 Statement of the Case
 

 On April 4, 1991, Fidelity contracted with the Alameda Unified School District (AUSD) to reroof Encinal High School. On December 10, AUSD passed a resolution accepting the project as complete. On March 25, 1992, DLSE filed suit against Fidelity to recover unpaid wages and penalties under the state’s prevailing wage law. In the same complaint, DLSE also sued Indiana Lumbermens Mutual Insurance Company (Lumbermens), the surety on Fidelity’s payment bond.
 

 
 *415
 
 Following a court trial, judgment was entered in favor of DLSE and against Fidelity for unpaid wages in an amount not to exceed $45,950.65. The court ordered the award reduced by that portion attributable to benefits for medical insurance and retirement plans, concluding that federal law
 
 [2]
 
 preempted recovery for that amount. Consequently, the court retained jurisdiction over the amount of the award until the preempted portion could be determined. Additionally, the court specifically disallowed any recovery in favor of DLSE for penalties, finding that DLSE had failed to exercise its discretion in determining that amount as required by statute (§ 1775). Finally, judgment was entered in favor of Lumbermens and against DLSE on the ground that the payment bond was a materialman’s bond and thus was not surety for unpaid wages.
 

 Fidelity appealed from the judgment, alleging that DLSE’s complaint was barred by the statute of limitations, that the trial court erred in assessing unpaid wages against Fidelity, and that any recovery in favor of DLSE should be further reduced by those wages attributable to employees enrolled in an apprenticeship program because ERISA preempts application of the prevailing wage law to such programs. As noted, we agree with Fidelity that DLSE’s complaint was untimely and, on that basis, reverse the portion of the judgment ordering Fidelity to pay DLSE for unpaid wages.
 

 DLSE appealed from the judgment in favor of Lumbermens, alleging the trial court erred in holding the payment bond was not surety for unpaid prevailing wages. We agree. Because Lumbermens’s liability derives from Fidelity’s, we were compelled to consider Fidelity’s further contentions of improper assessment of penalties and ERISA preemption. We were also compelled to consider Lumbermens’s independent claim of a more general ERISA preemption. Having done so, we conclude that the unpaid wages were properly assessed and that ERISA does not preempt the application of the state’s prevailing wage law on these facts. Consequently, we reverse the portion of the judgment in favor of Lumbermens and direct that judgment be entered in favor of DLSE as against Lumbermens.
 
 [3]
 

 
 *416
 

 Discussion
 

 I.
 
 An Overview of the Prevailing Wage Law
 

 “To effect public policy in favor of enforcing minimum labor standards, the conditions of employment on publicly financed construction projects are governed by California’s prevailing wage law. (Lab. Code, §§ 90.5, 1720-1861; see
 
 Lusardi Construction Co.
 
 v.
 
 Aubry
 
 (1992) 1 Cal.4th 976, 986 . . . .)”
 
 (Independent Roofing Contractors
 
 v.
 
 Department of Industrial Relations
 
 (1994) 23 Cal.App.4th 345, 351 [28 Cal.Rptr.2d 550], fn. omitted.) The original contractor and all subcontractors on a qualifying public works project
 
 [4]
 
 are required to pay prevailing rates of wage. (§§ 1771, 1774.)
 

 In 1937, the Legislature established the Labor Code, including the state’s prevailing wage law in substantially its current form. (Stats. 1937, ch. 90, p. 185;
 
 id.,
 
 § 1720 et seq., pp. 241-246.) As originally conceived, the Labor Code provided for the assessment of penalties against a contractor who failed to pay prevailing wages and for the withholding of these penalties by the public entity awarding the contract. The awarding body was required to forward these penalties to the State Treasurer upon expiration of a 90-day period, during which time the contractor could object.
 
 [5]
 
 (Stats. 1937, ch. 90, § 1727, pp. 241-242; §§ 1730-1732, p. 242; § 1775, p. 243.)
 

 hi 1957, the Legislature amended section 1775 to provide for an action by the Division of Labor Law Enforcement (now DLSE) to recover these penalties. However, the state’s right of action arose only when there was insufficient money still due the contractor to cover the penalties or the contract did not call for the payment of money to the contractor. (Stats. 1957, ch. 397, § 1, pp. 1240-1241.)
 

 In 1963, section 1775 was again amended to add a provision that the contractor must also pay the worker that portion of the prevailing wage that had not previously been paid. DLSE’s right of action could encompass these unpaid wages in addition to the penalties. All money recovered or withheld would first be used to pay the workers the unpaid portion of the prevailing wage. If the funds were insufficient for this purpose, their disbursal would be
 
 *417
 
 prorated among the aggrieved workers. This amendment also clarified a provision requiring that the public works contract include a requirement of section 1775 compliance.
 
 [6]
 
 (Stats. 1963, ch. 467, § 1, pp. 1320-1321.)
 

 In 1974, the Attorney General concluded that the Labor Commissioner
 
 [7]
 
 could not collect unpaid wages without assignment from the aggrieved worker. Given the transient nature of a large portion of the state’s labor force, the commissioner thus had difficulty enforcing the prevailing wage law. Consequently, in 1975, the Legislature added section 96.7, which provides, in part, that the Labor Commissioner may collect unpaid wages and benefits on behalf of workers without assignment. (Stats. 1975, ch. 714, § 2, p. 1705; see Legis. Counsel’s Dig., Sen. Bill No. 883, 2 Stats. 1975 (Reg. Sess.) Summary Dig., p. 178; Rep. of Agriculture and Services Agency (Sept. 3, 1975); and Letter to Governor Brown from Atty. Gen. Younger (Sept. 10,1975).) Thereafter, DLSE could pursue the unpaid wages and then search for the aggrieved worker. (§ 96.7, subd. (b).) However, DLSE must bring its action within 90 days of the recording of a valid notice of completion or 90 days of the awarding body’s acceptance of the public work as complete,
 
 whichever occurs last.
 
 (§ 1775.)
 
 [8]
 

 II.
 
 DLSE’s Claim Against Fidelity
 

 A. Statute of Limitations
 

 Fidelity first alleges DLSE’s complaint for wages and penalties was barred by the statute of limitations set forth in section 1775. We agree.
 

 Here, the parties agree the project was accepted as complete by AUSD on December 10, 1991, that no notice of completion was ever recorded,
 
 [8]
 
 and that DLSE’s complaint was filed on March 25, 1992. Fidelity contends DLSE’s complaint was untimely because it was not filed within 90 days of December 10, i.e., by March 9, 1992.
 

 DLSE contends that because the 90-day limitations period begins to run upon the occurrence of the later of 2 events (the acceptance of the project or
 
 *418
 
 the recording of a valid notice of completion), the statute requires that both events in fact occur. According to DLSE, when both a valid notice of completion is recorded and the public work is accepted, the parties can easily determine which of those two events occurred last, thus signaling the beginning of the 90-day limitations period. Here, however, a valid notice of completion was never recorded. Consequently, DLSE argues that the limitations period never began to run and, thus, never expired. DLSE’s position is contrary to logic. The statute clearly indicates the limitations period will begin to run from the later of two events. However, when a valid notice of completion is not recorded, the limitations period begins to run from the acceptance of the public works project by the awarding body.
 

 In a public works context, completion occurs upon acceptance of the project by the awarding body. (Civ. Code, § 3086.) Consequently, once AUSD accepted the project on December 10, it had until December 20 to record a notice of completion. (Civ. Code, § 3093.) That failing, a
 
 valid
 
 notice of completion could never be recorded. DLSE argues that the absence of a valid notice creates an indefinite period for the filing of suit against Fidelity. We disagree. The 90-day period for DLSE to act begins to run upon the completion of the public work unless a notice of completion is recorded within the next 10 days. If a notice is recorded within 10 days of completion, the 90-day period begins to run anew from the date of recording. (Accord,
 
 Kray Cabling Co.
 
 v.
 
 County of Contra Costa
 
 (1995) 39 Cal.App.4th 1588, 1591-1594 [46 Cal.Rptr.2d 674].) Because no notice of completion was recorded in this case, the statute of limitations period began on December 10, 1991, and ended on March 9, 1992. DLSE’s complaint was therefore untimely.
 

 DLSE raises various points in support of its position which we consider and reject below. Some background is useful as context for this discussion. A mechanic’s lien is the procedural vehicle for obtaining payment of a debt owed by a property owner for the performance of labor or for the furnishing of materials used in construction. (Civ. Code, §§ 3109-3154.) Mechanics’ liens are not applicable to the performance of public work. (Civ. Code, § 3109.) Each claimant has 90 days from the completion of the work to record his claim of lien, unless a notice of completion is recorded. If such a notice is recorded, original contractors
 
 [9]
 
 have 60 days from that date to record a claim of lien, and all other claimants have 30 days to do so. (Civ. Code, §§3115-3116.)
 

 A notice of completion must be signed and verified by the owner or his agent and “shall” be recorded within 10 days after the completion of the
 
 *419
 
 work. (Civ. Code, § 3093.) Consequently, in the absence of a notice of completion, all mechanics’ liens must be recorded within 90 days of the completion of the project. The owner may give rise to a shorter statute of limitations by recording a notice of completion within 10 days of the completion. If recording occurs, claimants must act more quickly, i.e., original contractors within 60 days and other claimants within 30.
 

 While mechanics’ liens are not applicable to a public works project, stop notices are. “A stop notice (sometimes called a ‘notice to withhold’) is a remedy to reach unexpended construction funds in the hands of the owner or lender and is available on both private and public works. . . .” (Cal. Mechanics’ Liens and Other Remedies (Cont.Ed.Bar 1988) § 1.71, p. 39; see also Civ. Code, § 3181.) A stop notice for public work may be served by a claimant other than an original contractor but must be served no more than 30 days after a notice of completion is recorded or 90 days after completion if no notice is recorded. (Civ. Code, §§3181, 3184.)
 

 Finally, the payment bond is the practical substitute for the mechanic’s lien in the public works context when a stop notice is inadequate because insufficient funds remain to be paid. Every original contractor is required to file a payment bond when awarded a contract by a public entity involving expenditure in excess of $25,000. (Civ. Code, § 3247.) A claimant may sue the surety on the payment bond to recover for labor or materials but must do so no later than six months after the stop-notice limitation period has expired. (Civ. Code, § 3249.) Thus, a claimant has approximately seven months after the recording of a valid notice of completion to bring suit against the surety or nine months after completion if no notice is recorded.
 

 1.
 
 Is Civil Code Section 3093 Directory or Mandatory?
 

 Initially, DLSE contends the requirement in Civil Code section 3093 that a notice of completion be recorded within 10 days of completion is merely directory and not mandatory. Additionally, DLSE argues that the failure to timely record a notice does not affect the validity of the notice. DLSE cites other language in section 3093 and argues that the validity of the notice of completion depends only upon its recitation of the correct date of completion. While the recitation of an incorrect date of completion.
 
 [10]
 
 may render a notice invalid, it is not the only means of doing so.
 

 
 *420
 
 The Fifth Appellate District recently concluded that a notice of completion is invalid if not recorded within 10 days of completion.
 
 (Fontana Paving, Inc.
 
 v.
 
 Hedley Brothers, Inc.
 
 (1995) 38 Cal.App.4th 146, 154 [45 Cal.Rptr.2d 295].) Our own district held similarly when interpreting Code of Civil Procedure former section 1193.1, subdivision (c), the predecessor to Civil Code section 3093.
 
 (Doherty
 
 v.
 
 Carruthers
 
 (1959) 171 Cal.App.2d 214, 216 [340 P.2d 58]; see also fn. 12,
 
 post.)
 
 As noted above, the recording of a notice of completion invokes a shorter statute of limitations for the recording of mechanics’ liens, service of stop notices, or filing of claims against the payment bond surety. Under DLSE’s analysis, that statute of limitations period could be invoked by recording the notice of completion at any time. We reject that analysis because it would result in an unsettled state of affairs whereby the recording of a notice several months after completion would revive the claims period. The provisions of Civil Code section 3093 are mandatory. Thus, in order to invoke the statute of limitations period corresponding to the recording of a notice of completion, the notice of completion must be valid and, therefore, must be recorded within 10 days of the project’s completion.
 

 2.
 
 Is the Recording of a Notice of Completion Essential to Enforcement of the Prevailing Wage Law?
 

 DLSE contends the statute of limitations requires both acceptance and notice of completion before the time period to bring suit begins to run, because the notice is integral to the enforcement of the prevailing wage law. Specifically, DLSE argues that because it is the enforcing entity of the prevailing wage statute and because it is not a participant in the various public works projects over which it has authority, the recording of the notice of completion is essential to the enforcement of the statute. Without notice, DLSE contends, it would not know when the myriad public works projects were completed and would not be aware that the statute of limitations was running. According to DLSE, it can more easily track the recording of notices in the recorder’s offices of the various counties than it can monitor every public works project for completion. Conversely, DLSE argues that private claimants (such as those serving a stop notice or recording a mechanic’s lien) all have firsthand knowledge of the project and its completion such that the recording of the notice is not essential to their ability to make a claim. Presumably, these claimants would be aware of the project’s completion and, therefore, the running of the 90-day statute of limitations. The recording of the notice would merely serve to alert them to the invocation of a shorter limitations period.
 

 First, we note that not all claimants under the various private remedies are necessarily contemporaneously aware of a project’s completion. While a
 
 *421
 
 general contractor might be aware of the project’s completion, various subcontractors and noncontracting parties might not, particularly if their contribution was completed early in the project. Nonetheless, in the absence of a notice of completion, these parties are required to record a mechanic’s lien or serve a stop notice within 90 days of completion or file a claim against the payment bond surety within 9 months of completion.
 

 Second, section 1775 itself contemplates that DLSE will be notified by the awarding body of any failures to pay the prevailing wage rate. Obviously, the notice of completion is not intended to be the means by which DLSE is notified of possible violations of the statute. Indeed, the case before us disproves DLSE’s contention. Here, no notice was recorded; yet, DLSE was notified well within the limitations period of a potential violation. The recording of a notice of completion is not essential to the enforcement of the prevailing wage law.
 

 3.
 
 Could Fidelity Have Recorded a Notice of Completion?
 

 DLSE suggests Fidelity could have recorded a notice of completion itself thereby limiting the time during which DLSE could file a claim. Indeed, the trial court held Fidelity could have done so. We do not agree.
 

 A notice of completion must be signed and verified by the owner or his agent. (Civ. Code, § 3093.) If Fidelity could not persuade AUSD to sign and verify the notice, DLSE suggests Fidelity could have pursued a writ of mandate. However, there is no requirement that an owner or awarding body record a notice of completion or assist in its recording.
 
 (Fontana Paving, Inc.
 
 v.
 
 Hedley Brothers, Inc., supra,
 
 38 Cal.App.4th at p. 154.) DLSE articulates no basis upon which Fidelity, or a court upon petition for a writ of mandate, could compel AUSD to record a notice of completion. A notice of completion is designed to aid the owner or awarding body by shortening the claims periods for the various private remedies. Contractors or other participants in the construction project have no obligation to record or compel the recording of such notices.
 
 [11]
 

 4.
 
 Significance of Legislative History
 

 Finally, DLSE relies upon legislative history to support its position that the 90-day statute of limitations requires both acceptance and the recording
 
 *422
 
 of a notice of completion. As noted above, section 1775 was amended in 1957 to add the provision permitting DLSE to file an action to recover penalties. (Stats. 1957, ch. 397, § 1, pp. 1240-1241.) As originally proposed, the statute of limitations in that amendment read: “Such action shall be filed within 90 days after the filing of a notice of completion in the office of the county recorder of the county in which the public work or some part thereof was performed, or within 90 days after acceptance of such public work,
 
 whichever first occurs''’
 
 (Assem. Bill No. 1517 (1957 Reg. Sess.) § 1, italics added.) Before its passage, the statute of limitations section was amended to read as it currently does: The action must be filed within 90 days of whichever of the 2 events occurs last. DLSE cites this amendment as evidence the Legislature intended to require both events before the statute of limitations would begin to run. There is no evidence the Legislature so intended. In fact, it is more likely the Legislature realized that the recording of a valid notice of completion could never occur first, because the law required the notice to be recorded after acceptance of the project.
 
 [12]
 

 DLSE’s action under section 1775 was untimely. However, DLSE’s action against the surety, Lumbermens, was not barred by the statute of limitations, because claims against the payment bond can be made within six months of the expiration of the stop notice period. (Civ. Code, § 3249.) Thus, DLSE’s claim against Lumbermens was well within the statute of limitations. Because Lumbermens’s liability derives from Fidelity’s, we must consider whether the unpaid wages were properly assessed against Fidelity before we can turn to the propriety of DLSE’s claim against Lumbermens.
 

 B.
 
 Fidelity’s Claim of Good Faith
 

 *
 

 III.
 
 DLSE’s Claim Against Lumbermens
 

 The trial court here held that DLSE could not recover unpaid wages from Lumbermens, the surety on the payment bond. We disagree and hold that DLSE is a proper claimant against the bond. Determination of this question requires resolution of an apparent conflict between the Civil Code and the Labor Code as to whether DLSE must secure an assignment from those who were not paid the prevailing wage.
 

 
 *423
 
 A.
 
 The Law Pertaining to Payment Bonds
 

 As noted above, the payment bond is the practical substitute for the mechanic’s lien in the public works context when a stop notice is inadequate because insufficient funds remain to be paid by the awarding body. “No lien being available to those who perform labor or furnish material on public works [citation], the provisions of the Public Works Act requiring a bond were obviously enacted to create a fund in lieu of the building or work itself against which materialmen and laborers might proceed as an additional and contemporaneous remedy. The bond required is not a voluntary bond but a statutory bond [citations], and affords an additional or cumulative remedy. [Citation.]”
 
 (Pneucrete Corp.
 
 v.
 
 U. S. Fid. & G. Co.
 
 (1935) 7 Cal.App.2d 733, 737 [46 P.2d 1000].)
 

 In general, by virtue of the agreement between the surety and the principal, the surety guarantees the performance by the principal of some obligation to a third party, or obligee. Thus, unlike an ordinary insurance contract, the agreement is not for the benefit of the principal but for the benefit of the obligee who is not party to the agreement. The surety’s obligation to the obligee derives from, but is independent of, the principal’s obligation. (Croskey et al., Cal. Practice Guide: Insurance Litigation 1 (The Rutter Group 1997) ^6:1700 to 6:1721, pp. 61-1 to 61-5.) However, in the context of public works, the surety is liable to an obligee even if the principal is not. That is, the payment bond surety is liable to any laborer who supplied work on the public project. This liability exists even though the laborer has no contractual relationship with or any right of action against the general contractor.
 
 (Powers Regulator Co.
 
 v.
 
 Seaboard Surety Co.
 
 (1962) 204 Cal.App.2d 338, 345-346 [22 Cal.Rptr. 373].)
 

 Civil Code section 3248, subdivision (c) provides that the payment bond shall “[b]y its terms inure to the benefit of any of the persons named in Section 3181 so as to give a right of action to such persons or their assigns in any suit brought upon the bond.” In turn, Civil Code section 3181 describes those parties entitled to serve a stop notice in a public works context: “Except for an original contractor, any person mentioned in Section 3110, 3111, or 3112, or in Section 4107.7 of the Public Contract Code, or furnishing provisions, provender, or other supplies, may serve a stop notice upon the public entity responsible for the public work in accordance with this chapter.” DLSE is not included in any of the code sections enumerated in Civil Code section 3181, nor is it otherwise described there.
 

 Furthermore, Civil Code section 3248, subdivision (b) requires the payment bond must “[p]rovide that if the original contractor or a subcontractor
 
 *424
 
 fails to pay any of the persons named in Section 3181, or amounts due under the Unemployment Insurance Code with respect to work or labor performed under the contract, or for any amounts required to be deducted, withheld, and paid over to the Employment Development Department from the wages of employees of the contractor and subcontractors pursuant to Section 13020 of the Unemployment Insurance Code, with respect to such work and labor that the sureties will pay for the same . . . The Legislature included certain unemployment insurance contributions within the payment bond’s coverage. However, the Legislature made no mention of amounts due DLSE under the prevailing wage law for unpaid wages or penalties.
 

 In
 
 People
 
 v.
 
 Continental Casualty Co.
 
 (1953) 118 Cal.App.2d 133 [257 P.2d 495], the state brought an action against the payment bond surety to recover sums due under the Unemployment Insurance Act. The surety claimed that the state was barred by a statute of limitations providing: “ ‘Suit against the surety or sureties on the contractor’s bond may be brought by any claimant, or his assign, at any time after the claimant has ceased to perform labor or furnish material, or both, and until the expiration of six months after the period in which verified claims may be filed ....’”
 
 {Id.
 
 at p. 134; see Gov. Code, former § 4206, now Civ. Code, § 3249.) The parties agreed that if the statute applied to the government its action was delinquent. The court agreed with the state, however, that the statute applied only to those who furnish labor and materials and that the state furnishes neither.
 
 (People
 
 v.
 
 Continental Casualty Co., supra,
 
 at p. 135.) Consequently, the state’s action was not barred by the statute of limitations. (See also
 
 State of California
 
 ex rel.
 
 Dept. of Employment
 
 v.
 
 General Ins. Co.
 
 (1970) 13 Cal.App.3d 853 [96 Cal.Rptr. 744] [same result when state sought unemployment insurance contributions under Gov. Code, former § 4209].)
 
 [15]
 

 Because the state does not furnish labor or materials, it is not a contemplated beneficiary of the stop notice remedy under Civil Code section 3181
 
 *425
 
 or, by extension, the payment bond remedy under Civil Code section 3248. The sole exception arises if DLSE is seeking unpaid unemployment insurance contributions, as permitted by Civil Code section 3248, subdivision (b). That exception, by its terms, does not apply here.
 
 [16]
 
 Furthermore, DLSE does not allege, nor do we find, that it has any common law or contractual right of its own to proceed against the surety. Thus, there is no question that the penalties prescribed by section 1775 may not be obtained from the surety. Here, the trial court specifically disallowed any claim for penalties. Thus, we must consider only whether DLSE, acting on behalf of the aggrieved workers, may recover unpaid wages. First, however, we must consider whether the worker has a private right of action to recover unpaid prevailing wages.
 

 B.
 
 Private Right of Enforcement by Worker
 

 The legislative scheme contemplates that all workers on public projects will be paid prevailing wages. By law, every public works contract must require the contractor to pay all penalties and back wages in the event of a violation. (§ 1775.) Although all contractors and subcontractors on a public works project have a statutory duty to pay prevailing wages (§ 1774), there is no statutory requirement that a prevailing wage provision be inserted in the various contracts entered into by the contractor or subcontractors and their workers. Presumably, if the particular employment contract contains a prevailing wage provision, a worker may enforce that right by ordinary breach of contract remedy. The question remains whether the worker has a right to enforce the prevailing wage law in the absence of a specific provision in his employment contract.
 
 [17]
 

 The Supreme Court has touched on, without deciding, this question.
 
 [18]
 
 However, in
 
 Tippett
 
 v.
 
 Terich
 
 (1995) 37 Cal.App.4th 1517, 1531-1532 [44 Cal.Rptr.2d 862], the Fourth Appellate District concluded that section 1775’s provision for recovery of wages and penalties by DLSE was not the
 
 *426
 
 exclusive remedy for failure to pay those wages. Further, the
 
 Tippett
 
 court concluded: “If the contractor and the public agency agree in their contract that employees of contractors will be paid the prevailing wage, as is usually the case, a breach of contract action based on third party beneficiary principles is available to the employee. We find it fairly self-evident that the prevailing wage law was enacted to benefit employees as a class by requiring the payment of prevailing wages on public works. [Citations.] Since employees working on the public works projects are the intended beneficiaries of this provision, they are third party beneficiaries of the contract between the public agency and the contractor. We therefore find no obstacle to the employee’s common-law suit against the contractor on a third party beneficiary theory. [Citation.]”
 
 (Id.
 
 at p. 1533.)
 

 Here, the contract between Fidelity and AUSD specified that Fidelity would pay prevailing wage rates. The aggrieved workers are, therefore, third party beneficiaries of that contract. However, we next must consider whether DLSE may enforce a worker’s third party beneficiary rights on the worker’s behalf.
 

 C.
 
 DLSE’s Right to Enforce Wage Claims
 

 As noted above, the payment bond shall inure to the benefit of those who provide labor or materials
 
 or their assigns.
 
 (Civ. Code, § 3248, subd. (c).) There is no evidence on this record that DLSE received an assignment from the aggrieved workers to recover the unpaid wages. Section 96.7 was added to the Labor Code in 1975, permitting the Labor Commissioner to collect unpaid wages and benefits without assignment. (Stats. 1975, ch. 714, § 2, p. 1705.) Although the legislative history of that section suggests it was designed to enhance DLSE’s ability to carry out its duties in light of the transiency of many wage laborers (see pt. I.,
 
 ante),
 
 the statute contains no requirement that DLSE must first be unable to locate the aggrieved worker. The question arises whether section 96.7’s waiver of assignment supersedes the Civil Code’s requirement of an assignment when the claimant is not the actual provider of labor or materials. A cardinal principle of statutory interpretation is that a specific statute shall take precedence over a more general one touching on the same subject.
 
 (People
 
 v.
 
 Tanner
 
 (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr. 450, 596 P.2d 328].) Here, section 96.7 is specifically directed to DLSE’s ability to recover unpaid prevailing wages without an assignment. To that extent, it is more specific than the statute listing proper claimants against the payment bond (Civ. Code, § 3248, subd. (c)). We agree with our colleagues from the Fourth Appellate District who recently opined: “DLSE has ample authority to bring the action on the
 
 *427
 
 payment bond on behalf of the workers whose statutory rights to prevailing wages allegedly have been violated.”
 
 (Department of Industrial Relations
 
 v.
 
 Seaboard Surety Co.
 
 (1996) 50 Cal.App.4th 1501, 1510 [58 Cal.Rptr.2d 532].) Consequently, when DLSE pursues
 
 only unpaid wages
 
 and not the section 1775 penalties, it acts solely on behalf of the aggrieved workers. Under these circumstances, it may proceed against the surety on the payment bond without an assignment.
 

 When proceeding under section 1775 to recover unpaid prevailing wages and penalties, DLSE must act within 90 days of the acceptance of the public work or the recording of a valid notice of completion, whichever occurs last. A claimant has approximately seven months after the recording of a notice of completion to bring suit against the surety or nine months after completion if no notice is recorded. (Civ. Code, §§ 3184, 3249.) Lumbermens contends that affording DLSE the right to proceed against the surety obviates the 90-day statute of limitations for DLSE to recover unpaid prevailing wages and penalties under section 1775, because the limitations period for claims against the surety is at least seven months. However, DLSE may take advantage of the longer statute of limitations only when it is acting solely on behalf of the worker. DLSE’s action to recover unpaid wages
 
 and penalties
 
 is subject to the 90-day limitation.
 

 Thus, we conclude DLSE is a proper claimant against the surety when acting on behalf of the aggrieved workers to recover unpaid prevailing wages.
 

 D.
 
 Claim of Preemption
 

 *
 

 Conclusion and Disposition
 

 DLSE’s complaint against Fidelity was barred by the statute of limitations. Consequently, we reverse that portion of the judgment in favor of DLSE and direct the superior court to enter judgment in favor of Fidelity. DLSE’s complaint against Lumbermens was timely. Given that the trial court awarded only unpaid wages, DLSE could properly recover that amount from Lumbermens on behalf of the workers. The prevailing wage law was properly applied here and is not otherwise preempted by ERISA. Consequently, we reverse that portion of the judgment in favor of Lumbermens
 
 *428
 
 and direct the superior court to enter judgment in favor of DLSE as against Lumbermens. Each party is to bear its own costs on appeal.
 

 Strankman, Acting P. J.,
 
 *
 
 and Walker, J., concurred.
 

 [1]
 

 Unless otherwise noted, all further statutory references are to the Labor Code.
 

 [2]
 

 Specifically, the court cited section 1144(a) (29 U.S.C. § 1144(a)) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 United States Code section 1001 et seq.
 

 [3]
 

 Judgment on DLSE’s complaint was filed on December 22,1994, dismissing the action as to Lumbermens. This timely appealed followed. Judgment on Lumbermens’s cross-complaint against Fidelity and others was filed on April 18,1996, awarding Lumbermens $39,359.58 in attorney fees. Apparently, no appeal was taken from that judgment. Because we reverse that portion of the judgment on the complaint in favor of Lumbermens and direct the lower court to enter judgment in favor of DLSE as against Lumbermens for unpaid wages, Lumbermens asks us, by way of petition for rehearing, to remand the matter to allow for amendment of the judgment on its cross-complaint to include the judgment amount rendered against Lumber
 
 *416
 
 mens on the complaint. Simply, the judgment on the cross-complaint is not before us. We have no authority to direct its amendment.
 

 [4]
 

 See section 1771.5 detailing the minimum project values over which payment of the prevailing wage rate is required. There is no dispute here that the reroofing of Encinal High was a qualifying public works project.
 

 [5]
 

 The law now requires the awarding body to forward all funds to the Labor Commissioner for disbursement pursuant to section 1775. (§ 1731; Stats. 1992, ch. 1342, § 4.)
 

 [6]
 

 Section 1775 was amended again in 1978, 1989, and 1992. Those amendments are not relevant here.
 

 [7]
 

 The Labor Commissioner is the chief officer of DLSE. (§21.)
 

 [8]
 

 AUSD’s resolution accepting the project as complete was recorded in the county recorder’s office on December 26,1991. DLSE does not contend the resolution constitutes a notice of completion. We accept DLSE’s concession that no notice of completion was ever recorded. In any event, the resolution was not recorded within 10 days after the December 10 acceptance as required by Civil Code section 3093.
 

 [9]
 

 “ 'Original contractor' means any contractor who has a direct contractual relationship with the owner.” (Civ. Code, § 3095.)
 

 [10]
 

 Civil Code section 3093 reads in part: “ ‘Notice of Completion’ means a written notice, signed and verified by the owner or his agent, containing all of the following: [ü (a) The date of completion (other than a cessation of labor). The recital of an erroneous date of completion shall not, however, affect the validity of the notice if the true date of completion is within
 
 10
 
 days preceding the date of recording of such notice.”
 

 [11]
 

 The trial court also indicated Fidelity had not demonstrated any prejudice arising from DLSE’s filing the complaint more than 90 days from completion. We know of no authority, and DLSE offers none, for the proposition that the statute of limitations applies only when prejudice is shown.
 

 [12]
 

 At the time of the amendment, Code of Civil Procedure former section 1193.1 required a notice of completion to be recorded within 10 days after completion. (Stats. 1955, ch. 1511, § 1, p. 2750.) That code section was repealed with the adoption of Civil Code section 3093, which contains the same requirement. (Stats. 1969, ch. 1362, § 2, p. 2755, § 3, p. 2781.)
 

 *
 

 See footnote,
 
 ante,
 
 page 411.
 

 [15]
 

 Both sides rely upon dictum in
 
 Krueger Brothers Builders, Inc.
 
 v.
 
 San Francisco Housing Authority
 
 (1988) 198 Cal.App.3d 1 [243 Cal.Rptr. 585]. In that case, DLSE filed a stop notice against an awarding body to prevent it from distributing funds to a contractor who had failed to pay prevailing wages. The claim for unpaid wages was settled, and DLSE, thereafter, sought only penalties. The court noted that DLSE was not entitled to file a stop notice under Civil Code section 3181 because it was not a “person” within the meaning of that section. (See
 
 Krueger, supra,
 
 at p. 6.) Lumbermens argues the
 
 Krueger
 
 court meant that DLSE is never a proper claimant under the Civil Code stop notice provision and, therefore, under the payment bond provisions as well. DLSE contends the
 
 Krueger
 
 court meant that DLSE is not a proper claimant under the Civil Code stop notice provisions to the extent DLSE seeks penalties and not unpaid wages because penalties, unlike unpaid wages, inure to the benefit of the state not the workers. We need not resolve this ambiguity in the court’s analysis because the statement was merely dictum.
 

 [16]
 

 In
 
 People
 
 v.
 
 Continental Casualty Co., supra,
 
 118 Cal.App.2d 133, the state was a proper claimant because it sought unpaid unemployment insurance contributions specifically provided for in the payment bond statute.
 

 [17]
 

 The record does not include any employment contracts between the contractors and the workers. Thus, we cannot assume that any such contracts contained prevailing wage guarantees.
 

 [18]
 

 In
 
 Aubry
 
 v.
 
 Tri-City Hospital Dist.
 
 (1992) 2 Cal.4th 962, 969, footnote 5 [9 Cal.Rptr.2d 92, 831 P.2d 317], the court noted in dictum that it had yet to decide the question whether workers have a private right of action against the contractor for unpaid prevailing wages, but that any such action would have to be based on an express or implied contractual relationship between the worker and the contractor. Justice Kennard wrote, in dissent, that the failure to pay prevailing wages
 
 was
 
 actionable between private parties, based upon the statutory duty to pay those wages. (See
 
 id.
 
 at pp. 974-975 (dis. opn. of Kennard, J.).)
 

 *
 

 See footnote,
 
 ante,
 
 page 411.
 

 *
 

 Presiding Justice of the Court of Appeal, First District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.